Askounes' Liquor License Case.

Argued March 10, 1941.

Before KELLER, P. J., CUNNINGHAM, STADTFELD, RHODES and HIRT, JJ.

*James Gregg,* of *Portser, Gregg & McConnell,* for appellant.

*Horace A. Segelbaum,* Deputy Attorney General, with him *George W. Musser,* Special Deputy Attorney General, and *Claude T. Reno,* Attorney General, for appellee.

OPINION BY KELLER, P. J., April 30, 1941:

On July 18, 1940 the Pennsylvania Liquor Control Board revoked the restaurant liquor license issued to Peter Askounes, trading as 'The Candyland Cafe' in the City of New Castle. This action was the result of a hearing held May 24, 1940, following a citation duly issued and served on the licensee to show cause why

his license should not be revoked, at which witnesses were sworn and examined. The board found that the evidence established that the licensee (1) permitted minors to frequent the licensed premises; (2) sold liquor and malt or brewed beverages to minors; and (3) conducted and maintained a place where liquor and malt or brewed beverages were unlawfully sold.

Between the date of the hearing on the citation and the action of the board, the licensee had been tried in the Court of Quarter Sessions of Lawrence County on two indictments, the one (No. 103 June Sessions 1940) charging (1) that he sold liquor and beer to minors and (2) that he permitted liquor and beer to be sold to minors; the other (No. 103-A June Sessions 1940) charging that he permitted minors to frequent the licensed premises. He was convicted on indictment No. 103 charging the sale, etc. to minors, and was acquitted on No. 103-A, charging that he permitted minors to frequent his premises, but was ordered to pay the costs. The licensee's bartender was also convicted at the same time on an indictment charging that he sold intoxicating liquors to minors (No. 104 June Sessions 1940).

The licensee on August 5, 1940 appealed from the order of the board to the court of quarter sessions, and a hearing was had before President Judge BRAHAM on August 26, 1940, at which time it was stipulated and agreed by the parties that the testimony taken before the court of quarter sessions in the trial upon the indictments to No. 103 and 103-A June Sessions 1940 together with the testimony taken before the examiner of the Liquor Control Board on May 24, 1940, should be considered the same as though the witnesses were called, sworn and examined and cross-examined in the proceedings then before the court, and that the court was to arrive at its conclusion from the testimony so taken and filed.

Following this, the Court on September 11, 1940 filed its decision, dismissing the licensee's appeal and affirm-

ing the order of the Liquor Control Board. It provided further: "This decision is to become absolute unless exceptions are filed within ten days." An exception was sealed for the appellant the same day and on September 21, 1940 Askounes filed exceptions to the decision, which came on for argument before the court in banc on October 7, 1940. The court record shows that the case was submitted on briefs, but the same day Askounes presented two petitions, asking (1) for a reconsideration of the matter, and (2) for the disqualification of President Judge BRAHAM, who presided at the hearing, to sit further in the matter, and for the disqualification of the additional law Judge, THOMAS W. DICKEY, to act in his place.

The grounds presented for the disqualification of President Judge BRAHAM were that the minors who were served with intoxicating liquors by Askounes and his bartender were students at Westminster College, New Wilmington, Pa. (17, 18, 19 and 20 years old, respectively, most of them freshmen), of which college Judge BRAHAM is a member of the Board of Trustees; and that in the General Regulations and Discipline of said College it is provided: "The use of intoxicants by students while in attendance at Westminster College is in violation of the principles and traditions of the institution. The college earnestly desires the sincere cooperation of students and their parents in maintaining this standard. Known failure of students to comply will result in disciplinary action." It alleged that by reason thereof Judge BRAHAM "is prejudiced, is interested in the outcome of this case and cannot impartially perform the functions of a judge", and prayed him to revoke the order entered on September 11, 1940 and to disqualify himself and summon another judge to sit and determine the matter.

The reason advanced for the disqualification of Judge DICKEY was that he "should not be called upon to re-

vise or reverse the action of the President Judge of the Fifty-third District, the Honorable W. W. BRAHAM".

Rules were granted, to which an answer was filed by the Liquor Control Board denying any disqualifying interest by the President Judge in the said minors by reason of their being students at Westminster College or that he was biased or prejudiced in the matter. No testimony was taken on the rules.

The matters were fully argued before the court on November 4, and on November 16 the court handed down an opinion, signed by both judges, and its order refusing and dismissing the petition to disqualify President Judge BRAHAM; refusing and dismissing the petition to disqualify Judge DICKEY; refusing to reconsider its decision dismissing the appeal from the order of the Liquor Control Board; and overruling and dismissing the exceptions filed by Peter Askounes to its decision and order of September 11, 1940, which thereby became absolute.

Peter Askounes appealed. The appeal will be dismissed.

(1) We will discuss the alleged disqualification of the judges of the court below first, for if that is not sustained, the appeal must fall, as our review of the court's decision on the merits is by way of certiorari and, if it is supported by competent evidence, an appeal from it will be dismissed, unless a clear abuse of discretion appears.

The opinion, which was apparently written by Judge BRAHAM, but was signed by both judges, conformed to the practice and principles laid down by the Supreme Court in *Crawford's Estate*, 307 Pa. 102, 108, 109, 160 A. 585, relative to the procedure to be followed where a litigant charges that a judge is disqualified by bias, prejudice, unfairness, or interest from hearing and deciding a case, and to the evidence necessary to be produced by the party alleging such disqualification; and it constitutes a complete refutation of any disqualifying

bias or interest on the part of either judge, and justifies their conclusion, "We have examined the question thoroughly and carefully and have searched our minds and consciences for anything in this case which would disqualify us or either of us and find nothing."

As no evidence whatever was produced by the appellant in support of his petitions, notwithstanding the duty incumbent on him under the decision in *Crawford's Estate,* supra, to "produce evidence which has a tendency to show bias, prejudice or unfairness" (p. 109), we are limited to the averments of fact in the petitions, which, if accepted as true, fall so far short of supporting the allegations of bias, prejudice or disqualifying interest, that the charge, having no substantial support, falls of its own weakness.

A judge, on assuming office, is not required nor expected to resign, or refuse to accept, membership on the governing bodies of religious, charitable or educational institutions. Like other men he may perform such civic duties as specially interest him. His membership on the board of trustees of a college will disqualify him from sitting in a case the outcome of which will affect *its financial* affairs, but this disqualification does not extend so as to prevent his participation in the trial of a case which is concerned with the private and individual affairs of the students of the college, whether as litigants or as witnesses, and whether the case be a civil or a criminal one. So also, judges who are trustees of a church or hospital, while disqualified from passing upon litigation involving the financial interests of the institutions are not disqualified from hearing cases involving the private and individual affairs of their fellow church members or the patients of the hospital. The principle is so obvious as to be almost axiomatic.

Nor does the regulation or by-law of Westminster College above referred to have any effect on Judge BRAHAM'S qualifications to act in this case.

The regulation is a perfectly proper one for a college with a large number of students, especially in the lower classes, who are minors, and who may be injuriously affected by the influence and example of upper classmen who are of age. But it has nothing to do with this case. At the time of the hearing Judge BRAHAM was not even aware of it, and it was not mentioned in the course of the trial or hearing. This appellant was not convicted of selling intoxicating liquors to college students, contrary to the college regulations, nor was his license revoked on that account. The charge against him, which resulted in his conviction and the revocation of his license, was selling intoxicating liquors to minors, an offense against our criminal laws and justifying the revocation of his license.

Judge BRAHAM presided at the trial of the defendant in the court of quarter sessions. His membership on the board of trustees of Westminster College was a matter of public knowledge. No exception was taken to it or to his conduct on the trial; on the contrary, the defendant's counsel at the time of the argument of the motion for a new trial explicitly stated that the trial by the President Judge had been entirely fair and disinterested. No exception was taken or could be taken to his conduct on the hearing, for no evidence was then heard, the parties stipulating, of their own motion, that the case should be decided on the testimony taken at the trial of the criminal case and at the hearing before the Liquor Control Board.

The action subsequently taken by the presentation of these petitions was probably the result of overzealousness on the part of counsel, but it was without any justification in fact or law and merits just criticism. The language of Mr. Justice (afterwards Chief Justice) KEPHART, speaking for the Supreme Court in *Crawford's Estate*, supra (pp. 108 and 109) is specially applicable: "But, while the mediation of courts is based upon the principle of judicial impartiality, disinterestedness, and

fairness pervading the whole system of judicature, so that courts may as near as possible be above suspicion, there is, on the other side, an important issue at stake; that is, that causes may not be unfairly prejudiced, unduly delayed, or discontent created through unfounded charges of prejudice or unfairness made against the judge in the trial of a cause. It is of great importance to the administration of justice that such should not occur. If the judge feels that he can hear and dispose of the case fairly and without prejudice, his decision will be final unless there is an abuse of discretion. This must be so for the security of the bench and the successful administration of justice."

We find no abuse of discretion in the action of the lower court upon these petitions.

(2) The scope of the review by this court on an appeal from a decision of the court of quarter sessions, which sustains an order of the Liquor Control Board *revoking* a liquor license, is well expressed in two recent opinions of this court, *Com. v. Hildebrand,* 139 Pa. Superior Ct. 304, 11 A. 2d 688 (Hirt, J.) and *Mami's Liquor License Case,* 144 Pa. Superior Ct. 285, 19 A. 2d 549. The matter arises under section 410 of the Liquor Control Act of November 29, 1933, P. L. 15, as re-enacted and amended by the Act of June 16, 1937, P. L. 1762, sec. 1, 47 PS §744—410. There is no specific provision in section 410,—such as is found in section 404 of the same Act, governing appeals to the court of quarter sessions from orders of the liquor control board *refusing to issue* a liquor license—that "There shall be no further appeal". However, an appeal *to this court* from the action of the court of quarter sessions on such revocation is not specifically allowed; so it is an appeal in the nature of a certiorari. But as the right of further appeal is not specifically denied, we may review the case in the broadest sense allowed on certiorari and are not limited to questions of jurisdiction and the regu-

larity of the proceedings: *Grime v. Dept. of Public Inst.,* 324 Pa. 371, 188 A. 337.

It is our duty, therefore, to review the record in order to determine whether there is evidence to support the order appealed from. We have done so and find ample evidence to support the order of the board and the decision and order of the court. See *Easton's Liquor License Case,* 142 Pa. Superior Ct. 49, 15 A. 2d 480. And further, we find no abuse of discretion justifying the reversal of the court's order.

The appeal is dismissed at the costs of the appellant.