Commonwealth ex rel. Balph *v.* Balph,
Appellant.

Argued April 11, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Myron B. Markel,* with him *Markel, Markel, Levenson & Fischer,* for appellant.

*Robert W. Smiley,* with him *Brandt, Riester, Brandt & Malone,* for appellee.

OPINION BY MONTGOMERY, J., June 16, 1967:

In this action for the support of two children of the appellant and appellee, who are divorced, there were two petitions presented to the lower court. The mother's petition sought an increase in an existing order of $150 per month which had been entered by agreement in September, 1961. The father's petition asked for a reduction in that order. After hearing, the lower court increased the order to $450 per month. This appeal followed.

In his opinion Judge GUFFEY stated that the increase was not based entirely on changed circumstances but that he exercised the privilege of considering the

case on a full review of "the entire situation" of the parties, citing *Commonwealth ex rel. Raitt v. Raitt,* 203 Pa. Superior Ct. 226, 199 A. 2d 512 (1964), as his authority for doing so. Judge GUFFEY made a finding that at the time of the original agreed order, "The children were infants and other than the occurrence of unusual and unexpected health problems, their needs were minimal and could have been met with prudent management at the amount agreed upon for support", and justified the increase on a change of circumstances from the time of the first order, "The most significant . . . consists of the difference in age of the children . . ."

At the time of the first order the parties had just been divorced and the health of the children was "fine". Prior to the divorce the family lived near Pittsburgh in a home valued at $14,000, encumbered with a $6,500 mortgage. For six months after the divorce the children and their mother resided in Pittsburgh with Mr. Beach, whom appellee married immediately after her divorce from appellant. Thereafter they moved to Baltimore, Maryland. A third child, Richard E. Beach, Jr., was born to Mr. and Mrs. Beach after their removal to Baltimore. The Baltimore home cost $57,000, was improved by an expenditure of $40,000 and is now for sale at $89,000. The children, Lisa and John, attend a private school for one-half day (9 to 1), the tuition for Lisa being $448 and for John $388 per year. They belong to a private swimming club for which the annual dues is $30 per year for each one. They spend three weeks of their summer vacation at the seashore, Ocean City, Maryland. They have a pet dog, the expenses for which appellee estimates at $170 per year. She estimates two dollars per week as incidental expenses for recreation for each child, $300 for Lisa and $200 for John for plane transportation; $110 per year for drugs for Lisa and $226 for John; $190 for doctors per year and $30 for dental

work for each child; $600 for each as shelter expense; $690 per year for dairy products; $1,200 per year for food; $250 for toys; $160 for baby sitter at the rate of $18 for five hours, etc., totaling, according to her testimony, $3,958 for Lisa and $3,660 for John, exclusive of medical expenses of $50 per week for psychiatric treatments for John.

Mr. Beach travels and appellee makes frequent trips with him to such places as Delta Beach Hotel in Puerto Rico, the Mardi Gras in New Orleans, Fort Lauderdale, Florida, Hawaii, Lake View Country Club, Morgantown, West Virginia. Mr. Beach retains his membership in the Pittsburgh Field Club and the Oakmont Country Club near Pittsburgh with the intention of returning to the Fox Chapel area near that city in a rental unit costing $550 per month.

It is obvious that the appellee has established a new and decidedly more expensive mode of living for herself and children than they enjoyed with appellant. Since the variance is so great the new mode lends little help in determining the obligation of the appellant to provide for his children. A father is required to support his minor children in a manner which is commensurate with his means and financial resources and his status in life, not that of someone else. *Commonwealth ex rel. O'Hey v. McCurdy*, 199 Pa. Superior Ct. 115, 184 A. 2d 291 (1962) ; *Commonwealth ex rel. Warner v. Warner*, 194 Pa. Superior Ct. 496, 168 A. 2d 755 (1961). He must provide the necessities of life to support them according to the station of life he enjoys and he must forego personal luxuries before he requests his children to make sacrifices. *Commonwealth ex rel. Kane v. Kane*, 199 Pa. Superior Ct. 489, 185 A. 2d 669 (1952). However, we fail to find any decision that requires a father to provide for his children according to the exaggerated desires of their mother which are beyond his means.

The lower court found that the order of September, 1961, was adequate at that time. It was entered into by the mother with the assistance of able counsel. At that time the father's gross annual earnings was $13,675.31, and in addition he received $801.79 from a $26,000 trust fund, and $282.50 as a member of the Air Force Reserve. In 1965 his gross earnings were $13,121.49 and his additional income from the trust fund and rental from the home formerly occupied by his family was $2,291.88. Appellant's net income after taxes was $12,891.10 in 1961, whereas the same figure in 1965 was $12,298.50.

The lower court looked beyond the above figures because of the fact that appellant worked for the W.G. Balph Company in which his father had a large interest, although he was not its president, and also because appellant's expenses were minimized by an expense allowance from the company and the privilege of living for three months of the year at the home of his parents while they were not there. However, Judge GUFFEY stated definitely that there was no evidence of regular gifts from the parents except to minimize their son's expenses. Such a situation may properly be considered, as well as the earning capacity, rather than the actual earning of a father. *Commonwealth ex rel. Raitt v. Raitt,* supra. However, the same situation existed in September, 1961, as well as in 1965, and at the time of the hearing.

We note also that as part of the agreement which, inter alia, provided for the support of these children, appellant paid to appellee $20,000 as a settlement and that he remains indebted to his father for $10,000 of this amount.

Under all of the circumstances just recited we are led to the inevitable conclusion that the lower court erred in increasing this order from $150 per month to $450. There is no doubt that it was privileged to dis-

regard the agreement although an order had been entered pursuant to it. *Commonwealth ex rel. Snively v. Snively,* 206 Pa. Superior Ct. 278, 212 A. 2d 905 (1965) ; *Commonwealth ex rel. Voltz v. Voltz,* 168 Pa. Superior Ct. 51, 76 A. 2d 464 (1950). However, it was clearly an abuse of discretion to increase it by such a large amount when, as he found, the only significant change was the increased age of the children, which, as we observe, made them eligible for school attendance.

The record fails to show that the father agreed that the children should attend private school, nor can we accept the finding that John required psychiatric care at the cost of $50 per week in the absence of any evidence to show he had received any such care, or the testimony of anyone except his mother, that he was in need of it. The record also lacks convincing evidence that the health of the children is other than it was when the 1961 order was entered, at which time it was described as "fine".

The important item of increased expenditure was, of course, expenses arising from the needs of growing children. We think that $250 per month was an appropriate amount to provide them with the necessities of life required by the station of life which the resources of the father would reasonably establish for them.

The order is reduced to $250 per month and affirmed in the reduced amount.