**Commonwealth ex rel. Lane v. Lane**

*Alan E. Boroff,* for petitioner.
*I. Raymond Kremer,* for defendant.

STANZIANI, J., May 19, 1972.—Petitioner, Susan Lane, by her attorney, Lawrence F. Flick, Esq., requested on October 28, 1971, that a support order be

entered for her daughter, Amie Lane, in the amount of $100 per week to be paid by Amie's father who petitioner alleged earned in excess of $35,000 per year and did not make payments adequate to support the aforementioned minor child of the parties. The administrative hearing at the Domestic Relations Office took place on November 19, 1971, at which both parties and their counsel were present and the matter was then scheduled for a court hearing in January, 1972, but postponed because of illness and finally heard before the undersigned on March 1, 1972, with Alan E. Boroff, Esq., representing petitioner at the hearing and I. Raymond Kremer, Esq., representing respondent-husband.

Petitioner mother testified that she and respondent were divorced on March 9 of 1971, and that their six-year old child, Amie, was in her custody. She further testified that respondent father has been paying $50 per week for Amie's support pursuant to an agreement entered into with him on December 9, 1970. She said that at that time the $50 agreed upon was sufficient for Amie. The court considered the amount of support designated in the agreement to be fair and adequate at the time when the agreement was entered into and considered the provision for support in the separation agreement along with all other circumstances in determining the amount at which the support payments should be set. However, "As the agreed payment is for the support of children only, it was not then, and is not now, binding upon the court": Hecht v. Hecht, 189 Pa. Superior Ct. 276, 280 (1959).

Petitioner testified that her daughter's living expenses have increased and that circumstances have changed to reinforce her request for support for her child in excess of the amount agreed upon well over a year before the hearing. She cited many items that

were different from before her divorce, including increases in her electric bill, her telephone bill, house taxes, doctor and dentist bills, and generally, a somewhat higher cost of living than when the agreement was made. In addition to the foregoing, she pointed out that clothing expenses for Amie were increasing, since the child is very tall and grows quickly; that respondent father had paid for day camp for Amie the previous year which he in his testimony admitted cost $225; and that she felt that it was desirable to start Amie on art and ballet lessons. The desirability of this type of special education has been recognized by the Pennsylvania Superior Court in saying that, "Much of the special education and training which will be of value to people throughout life must be given them when they are young, or be forever lost to them": Hecht v. Hecht, supra, at page 283.

Unfortunately, there was a plethora of suggestiveness and innuendo in respondent attorney's cross-examination in support of which either no facts were ever introduced or facts to the contrary appeared in later testimony or on the record. For example, respondent's attorney used a list of expenses marked exhibit "R-2" which apparently had been prepared by petitioner's first attorney. Respondent's attorney suggested to petitioner that this was prepared for a hearing in 1970 and elicited the response from her that that was correct and then a further response that she was very confused about it. The record of the hearing on November 19, 1971, indicates that the list was used at that hearing almost one year after the original agreement in 1970. All of petitioner mother's testimony went uncontradicted by respondent father.

Respondent's attorney also made vague references to a support hearing of June term, 1969, no. 69-716, involving the parties in this action. The record reveals

that a complaint was filed by petitioner's first attorney, Lawrence Flick, on behalf of both mother and daughter on August 21, 1969, and an answer filed by respondent on September 9, 1969. There was no hearing and, in fact, the complaint was withdrawn about two months later on November 25, 1969. Respondent's present attorney signed the answer to complaint in the 1969 matter. He not only failed to relate the fact that the matter had been withdrawn but implied that a support order had been filed and that a judge of the Court of Common Pleas of Montgomery County had taken some action.

Respondent's testimony revealed that he had remarried since the divorce decree was entered and that he now has an eight-week-old daughter and a new wife to support. He is presently living in a new home, costing $43,000, in center city, Philadelphia, which respondent's attorney originally characterized to the court as a "walk-up." The $10,000 down-payment was made with the money of his new wife.

Although respondent had some outstanding debts allegedly amounting to $15,000 from his previous marriage, he virtually doubled the debt total in order to buy furniture, appliances, plumbing, electrical work and air conditioning for the $43,000 house which he and his new wife bought. He further testified that he had some stock and a rather substantial amount of capitalization in his corporation.

Respondent father is the president of a corporation which is known as Lane, Golden & Phillips Advertising. He acknowledged $38,000 in gross income for 1970 and then, in the absence of a tax return for 1971, read his W-2 for 1971 which showed gross earnings of $44,923.71 and other compensation paid of $335.22 with withholdings which leave a balance of $30,421.67. Respondent testified that after living expenses, food,

mortgage payments, clothing and medical bills are paid, he has nothing left.

A comparison of respondent's Federal income tax return for 1970 with the W-2 information for 1971 reveals a pertinent anomaly. In 1970 when his taxable income was $38,000 plus over $1,000 attributable to his first wife, his income tax, arrived at by income averaging over a five-year period, was $7,642; whereas in 1971 he had $11,437.95 withheld from wages of $44,923.71. His city income tax deduction in 1970 for over $39,000 was $732.00 whereas his city income tax withheld for 1971 was $1,389.87. Since respondent remarried shortly after his divorce in 1971 and the pertinent portion of the separation agreement indicates that respondent would claim the tax exemption for Amy Deanne Lane, the subject of this support action, it would appear that his tax status as a taxpayer filing a joint return with three deductions would be the same in 1971 as in 1970. Therefore, either the gross income of respondent represented a substantial change in circumstances between 1970 and 1971 or there would be a tax refund due from the year 1971 which would result in a marked change in the net income of the respondent between 1970 and 1971. Of course, the State income tax, which would serve as a deduction on the Federal income tax return for 1971, must be considered. In 1970, the respondent paid total taxes of $8,748.40 on gross income of $39,155 or approximately 22 percent, leaving him with a net income of $29,406.60 after subtracting the $1,000 attributable to his first wife, the petitioner. If approximately the same percentage of taxes plus the State income tax is deducted from his 1971 gross income of $45,258.93 −($9,956.97 + $1,079.92), respondent would be left with a net income of $34,222.04 for 1971.

After reviewing the testimony and the exhibits, the

court determined that the change in the needs of the child and an increase in the income of the father justified an increase in the amount of support which had been paid as the result of a previous agreement.

"The amount which a father is required to pay for the support of his minor child can be increased, in a child support proceeding, to an amount in excess of that fixed in an agreement which has been entered into between the father and the mother prior to divorce, without any finding that the agreement is unreasonable": 28 P.L.E. 311; Commonwealth ex rel. Voltz v. Voltz, 168 Pa. Superior Ct. 51, (1950); Commonwealth ex rel. Balph v. Balph, 210 Pa. Superior Ct. 244 (1967).

A year in the life of a child Amie's age can result in a considerable change. The child is older and her needs for clothing are not only more frequent and expensive during these years but she is now able to benefit from the type of lessons in the fields of art and music that are certainly in keeping with the standard of living which Mr. Lane had with his first wife and has for his second wife.

The order of $70 per week for the support of his minor daughter, Amie Lane, from which respondent has appealed is approximately 12 percent of his net income of $34,222.04 after taxes even if $3,300 is also deducted for the payment of loans allegedly incurred for debts incurred during his marriage to petitioner mother, the figure of $3,300 having been arrived at by estimating a payment of $3,000 per year for five years on principal of $15,000 at 10 percent interest per year. The order is approximately 13 percent of his net income even if we accept *his* testimony that in 1971 he was left with a net balance of $30,421.67 after withholding taxes and subtract the $3,300 for loan payments, leaving a balance of $27,121.67.

Therefore, the order of $70 per week is certainly proper in view of the changes in circumstances.