398 A.2d 173

**COMMONWEALTH ex rel. Joy ARMOR (now Stanziani)**

v.

**David ARMOR, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 7, 1978.

Decided Dec. 29, 1978.

Petition for Allowance of Appeal Denied September 17, 1979.

354

John T. Snavely, II, Philadelphia, for appellant.

Lawrence F. Flick, Norristown, for appellee.

Before JACOBS, President Judge, and CERCONE, PRICE, VAN der VOORT, SPAETH, HESTER and WIEAND, JJ.

PRICE, Judge:

This is an appeal from the order of the Court of Common Pleas of Montgomery County dismissing father-appellant's petition to reduce a support order previously entered for two children in the amount of $75.00 per week. This original order in the amount of $75.00 per week for the two children was entered by the court below, after full hearing, on November 18, 1976. No appeal was taken.

On January 24, 1977, father-appellant filed the petition to reduce this $75.00 per week order on the basis of the changed circumstances of the mother-appellee. It is the denial of this petition on March 8, 1977, that forms the basis of the present appeal.

This appeal was initially argued before this Court on December 9, 1977, and was on September 21, 1978, ordered to be reargued before this Court En Banc during our December, 1978 session in the Eastern District. Such reargument occurred on December 7, 1978.

Father-appellant's petition for reduction set forth in its support that mother-appellee's circumstances had changed in that she had remarried, had ceased her employment and had moved from her apartment into the home of her new husband. Mother-appellee's answer admitted these facts.

We have reviewed this record thoroughly and find absolutely no merit to appellant's contention that the evidence establishes his entitlement to a reduction in the $75.00 per week support order for the parties two children. Were this appellant's sole contention this court would have long ago unanimously affirmed the dismissal of appellant's petition.

It is appellant's second contention that causes us concern and had prompted the delay and reargument previously recited.

Appellee has, as the record leaves no doubt, remarried and her present husband is a Judge of the Court of Common Pleas of Montgomery County. Her present husband did not participate in, nor is there an iota of evidence that he

evidenced any active interest in, the proceedings presently under review. The matter was, however, heard by one of the present husband's colleagues on the bench of the Court of Common Pleas of Montgomery County.

On March 7, 1977, one day prior to the hearing which produced the present order, appellant filed a Petition for Change of Venue. This petition set forth appellee's remarriage to the Judge and alleged:

1. That because of the official position of appellee's new husband a fair and impartial hearing could not be had in Montgomery County, and

2. That because of the official position of appellee's new husband any hearing within Montgomery County would create the appearance of impropriety in violation of the Disciplinary Rules of the Code of Professional Responsibility and the principles embodied in the Canon and Ethical Consideration of the Code, as adopted, Pa.R.C.P. No. 205.[1]

The Petition for Change of Venue was also denied by the court below on March 8, 1977, and this denial is also a subject of this appeal.

We disagree with appellant in his contention that he can not receive a fair and impartial hearing in Montgomery County, therefore on that ground we will not disturb the ruling of the court below.

We believe, however, that we should not approve the procedure whereby any of the judges of the Court of Common Pleas of Montgomery County are called upon to rule on matters relating to wife-appellee's child support matters. Such actions would, in our opinion, tend to weaken the public confidence in a court that has established an enviable record in its performance and service to Montgomery County and its citizens. Pursuant to Canon 1 of the Code of Judicial Conduct such action would be contrary to the appearance of integrity and independence of the judiciary which we are charged with preserving.

---

1. This is an erroneous reliance. We assume, however, a reference to the Code of Judicial Conduct, effective January 1, 1974. In particular we emphasize Canon 1 and 2.

Further, we believe that such action is contrary to Canon 2 of the Code of Judicial Conduct in that it does not promote public confidence in the integrity and impartiality of the judiciary.

We immediately add that our detailed review of this record does not reveal a single instance of bias, prejudice or unfairness. Nevertheless, the judicial system must be kept, like Caesar's wife, above reproach. Under the circumstances here presented, the appearance of appellee before the bench of Montgomery County, involving as it must her remarriage to a member of that bench, demands that such a case not be heard by any of the judge-husband's colleagues.

Although appellee argues the Petition for Change of Venue does not preserve the issue of assignment of an out-of-county judge, we disagree. It is, by its nature, included within the scope of the original petition. Also, by the second prong of the petition as to appearance of impropriety, the appellant has articulated the very issue decided by us today.

We find no merit to the remaining contentions of appellant.

We do not, however, foreclose the court below from the granting of a change of venue. We vacate the order dismissing appellant's Petition for Reduction of Support Order and the order denying the Petition for Change of Venue. We remand either for the assignment of an out-of-county judge or the grant of a change of venue.

CERCONE, J., files a concurring and dissenting opinion.

WIEAND, J., files a dissenting opinion in which HESTER, J., joins.

HOFFMAN and SPAETH, JJ., did not participate in the consideration or decision of this case.

CERCONE, Judge, concurring and dissenting:

I concur in the result reached by three of my colleagues that the lower court order be vacated and the case remanded. However, I disagree that a fair and impartial hearing

could not be held in Montgomery County by a judge sitting on the Court of Common Pleas there.

The parties, Joy Armor (now Stanziani) and David Armor, were divorced in October, 1976. Mr. Armor was ordered to pay $75.00 per week for the support of his two minor children. At the time of this first order, Mr. Armor was earning approximately $170.00 per week and was a full time graduate student at Bryn Mawr. In January, 1977, the father petitioned for a modification of the order. He testified that both his parents had been seriously ill and were forced to sell the Armor Business Machine Company where he had previously worked part-time while attending school. The loss of this part-time employment decreased his weekly earnings to $140.00. Joy Armor who had recently married Judge Joseph Stanziani, a member of the bench of the Court of Common Pleas of Montgomery County, counterfiled a petition for an increase in the support. At the time of the hearing on the petitions to decrease and increase the support, the new Mrs. Stanziani was represented by her attorney who was the County Controller of Montgomery County. David Armor moved for a change of venue due to the alleged appearance of impropriety caused by the County Controller representing Mrs. Stanziani and the fact that her husband was a colleague of any judge who would hear the case in that county. The change of venue was denied and the hearing on the modification of the support order proceeded. The lower court judge found there was not a significant change in circumstances shown to reduce or increase the support order.

I.

The first issue is whether the trial judge abused his discretion in refusing a change of venue where one party is the wife of a judge on the same bench and where she is represented by the County Controller. Generally, an order denying a motion for a change of venue is interlocutory and non-appealable absent the showing of extraordinary circumstances. *Hauser v. Goldstein,* 434 Pa. 84, 252 A.2d 616

(1969). However, such a denial is reviewable on appeal from a final decree which is adverse or prejudicial to the appellant. *Valley Traction Company's Case*, 236 Pa. 451, 84 A.2d 829 (1912).

The power to grant or refuse a change of venue is not inherent in the courts, but is governed by statute.[1] Section 113 of the statute states a change of venue may be granted

"Whenever it shall be made to appear to the court that a fair and impartial trial cannot be had in the county in which any such cause is pending." 12 P.S. § 113 III.

Appellant contends that since the County Controller who represented Mrs. Stanziani reviews and approves disbursements in Montgomery County, an appearance of impropriety occurred in violation of the Code of Professional Responsibility. Appellant argues further that any judge in Montgomery County who heard the case could be biased due to the fact the suit involved the wife of one of his colleagues on the bench.

In order for the change of venue to be granted, a party must show evidence that there is bias, prejudice or unfairness present. *Crawford's Estate*, 307 Pa. 102, 160 A. 585 (1931). Judge Cirillo, who presided at the hearings on the modification of the support order, commented on the record that the County Controller who represented Mrs. Stanziani had appeared before him approximately 70 times and lost at least half these cases. He stated further that he was only a casual acquaintance of Mrs. Stanziani, having met her once, and felt he could be impartial in his disposition of the case.

On the record before us in this case, I conclude the petition for change of venue was properly dismissed. This is consistent with the directive set by our Supreme Court in *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976). There, the presiding judge was an acquaintance of the victim in a murder prosecution. The Court said the judge's mere acquaintance with the victim could not give rise to an

1. Act of March 30, 1875, P.L. 35, § 1; 1878, May 25, P.L. 154; 1909, March 18, P.L. 37, § 1 et seq.; 12 P.S. §§ 111–120.

appearance of impropriety, bias or prejudice against the defendant. Also,

> "it would be an unworkable rule which demanded that a trial judge recuse himself whenever an acquaintance was a party to or had an interest in the controversy. Such a rule ignores that judges throughout the Commonwealth know and are known by many people, some of whom may eventually be the victims of a crime, and assumes that no judge can remain impartial when presiding in such a case . . . " 468 Pa. at 525, 364 A.2d at 318.

Hence I conclude there is insufficient evidence to raise an appearance of impropriety or that a fair and impartial trial could not be heard in Montgomery County.

## II.

The substantive issue in the case is whether the lower court abused its discretion in refusing to reduce the amount of the support order. Appellate review of this issue is limited to determining whether there was sufficient evidence to support the decision of the lower court. Of course, a party seeking modification of a support order must demonstrate such a material and substantial change in circumstances that warrant a modification. *Commonwealth ex rel. Hall v. Hall,* 243 Pa.Super. 162, 364 A.2d 500 (1976); *Schuster v. Schuster,* 226 Pa.Super. 542, 323 A.2d 760 (1974). A decision to reduce a support order must be based on facts in the record that show a permanent change requiring a modification of the order. *Bell v. Bell,* 228 Pa.Super. 280, 283, 323 A.2d 267, 269 (1974).

At the time of the first support hearing, appellant was a full time graduate student with weekly earnings totalling $170.00.[2] Appellant's ex-wife had taught school, then worked part time for the Montgomery County Home-Makers Service earning $2.65 per hour. The alleged change in

---

**2.** He received $420 per month in veterans benefits to defray his educational expenses. He worked part time at his parents' business, earning $4.00 per hour; he also played in a group earning $25.00 per booking. Appellant had previously been a pilot for a commercial airline, a youth counselor, and held a B.A. in physical education.

circumstances was that appellant had lost his part-time job at his parents' business and that appellee had married Judge Stanziani, moved into his home, quit her job, and enjoyed a higher standard of living than she had prior to her marriage to the Judge.

The lower court found that appellant's loss of income due to the sale of his parents' business did not meet the standard of being permanent and substantial enough to warrant a modification in the support order. His loss of income was only temporary until his schooling was complete. The fact that he was a full time graduate student was a voluntary, temporary change in which he placed himself. In the language of *Comm. ex rel. Snively v. Snively,* 206 Pa.Super. 278, 282, 212 A.2d 905 (1965):

> "His praiseworthy ambition to obtain an education, which may well work to the eventual advantage of his [children], cannot be realized at the expense of his obligation to support [his children] . . . ."

Thus, since appellant's earning capacity was greater than his actual earnings at the time of the hearing, *Comm. ex rel. Goichman v. Goichman,* 226 Pa.Super. 311, 316 A.2d 653 (1973), and he did prove a substantial and permanent change in circumstances, I agree with this conclusion in the lower court's opinion.

Appellant argues further, however, that after the passage of the Equal Rights Amendment in Pennsylvania, the duty of child support rests equally on both parents. *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974); *White v. White,* 226 Pa.Super. 499, 313 A.2d 776 (1973). Hence the earning capacity of the mother must also be considered in defraying the father's support obligation. In this case, the mother remarried, quit her job and ceased to contribute to the support of her children. Based on these facts, appellant asks us to change the support law to read that any remarriage under these facts is a permanent change in circumstances and that the stepparent is deemed to have voluntarily assumed the support responsibility.

There is nothing in our present support law that requires a new spouse to support minor children from a prior marriage. Nor do I feel such an extension should be made. Instead, the precedent established by this court is that the proper inquiry is the extent to which the new spouse's income defrays the family expenses. *Comm. ex rel. Hall v. Hall, supra; Comm. ex rel. Travitsky v. Travitsky,* 230 Pa.Super. 435, 326 A.2d 883 (1974). In this case although there was testimony concerning Judge Stanziani's income, there is no indication in the lower court's opinion that the hearing judge took into consideration the extent to which this income may have defrayed the support expenses of the Armor children. The exhibit introduced by Mrs. Stanziani showed the percentage of expenses that are necessary to support the two Armor children based on the lifestyle set by her new marriage. The support order cannot be based totally on her new status in life without considering the extent to which Judge Stanziani's income defrays those expenses.[3]

Accordingly I would remand for a new hearing specifically limited to the examination of the extent to which the new spouse's income defrays the expenses of rearing the two minor children.

WIEAND, Judge, dissenting:

After a full hearing, the trial court dismissed petitions filed by appellant David Armor, to reduce and by appellee, Joy Armor Stanziani, to increase an order previously entered in Montgomery County which directed appellant to pay $75.00 per week for the support of two children residing with appellee.

A majority of this Court finds no merit in appellant's contention that the evidence demonstrated a change in circumstances entitling him to a reduction in the amount of the order. The majority also concludes that appellant has not

---

**3.** Cf. *Comm. ex rel. Balph v. Balph,* 210 Pa.Super. 244, 232 A.2d 76 (1967); *Comm. ex rel. Yeats v. Yeats,* 168 Pa.Super. 550, 79 A.2d 793 (1951).

demonstrated a single instance of bias, prejudice or unfairness on the part of the judge who heard the case. Notwithstanding these conclusions, the case is remanded for another hearing before an out-of-county judge. The only reason given for the remand order is an appearance of impropriety which the majority finds because the hearing judge and the recently acquired second husband of appellee were judges of the Court of Common Pleas of Montgomery County. This in my judgment is an inadequate basis on which to compel disqualification as a matter of law; and therefore, I dissent.

Canon 3C–1 of the Code of Judicial Conduct adopted by The Supreme Court of Pennsylvania suggests that a "judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to [certain enumerated instances.]" The present fact pattern is not one of the enumerated situations. Indeed, the enumerated situations are not sufficiently similar to be of any assistance in resolving the need or advisability of disqualification in the instant case.

The public expects and has a right to demand a high degree of integrity and ethical responsibility on the part of its judges. There can be no doubt that all judicial proceedings must be free from appearances of impropriety. Therefore, a judge should not participate in proceedings in which his or her objectivity and impartiality are likely to be impaired. On the other hand, the public also expects courage and independence on the part of its judges. It is the individual judge who must in the first instance determine whether in good conscience and judgment he or she can hear a dispute objectively and impartially, or whether there should be a recusal. His or her decision will not be disturbed unless there is an abuse of discretion. *Crawford's Estate,* 307 Pa. 102, 160 A. 585 (1931). The public is entitled to the independent judgment of its judiciary and should not be denied that judgment by unsupported claims of partiality.

In my judgment, public confidence in the judiciary will be strengthened, not weakened, by respecting and upholding the trial judge's determination that he could hear and decide

the instant case impartially. Public confidence is not weakened because judges are called upon to hear and decide difficult and controversial cases. The public does expect, however, that judges will rise above any influence which is inherent in the high or low estate of litigants who come before them. Courage and integrity are the hallmarks of an independent judiciary. More often than we like to contemplate, it is recusals too readily tendered in complex and controversial cases which weaken public respect for the judiciary.

It is possible, of course, that another judge may have found it prudent to recuse himself or herself under the circumstances of this case. If, in the exercise of that judge's best judgment and conscience, his or her objectivity would have been impaired because of acquaintanceship with appellee's husband, then certainly disqualification would be the better course to follow. It is the judge who must hear the case, however, who can best determine whether it is likely that his or her impartiality will be compromised. This is not always an easy decision to make. When a decision has been reached to hear an issue, that decision should not be set aside lightly because of unsupported claims of bias.

There is an aspect of the majority's solution which also troubles me. If occupancy of the trial bench by appellee's husband and the judge assigned to hear the case is sufficient to create an appearance of impropriety and partiality, which judge in our unified judicial system can hear the case without being subject to similar criticism? To say that the appearance of impropriety, which the majority finds in the instant case, will be less obvious if an out-of-county judge is assigned to hear the case will not suffice. This solution to the majority's perception of an apparent impropriety would only make the appearance of impropriety less obvious. However, such a solution would not keep the judiciary above reproach.

The better rule, therefore, would seem to be that when a judge is called upon to hear a case affecting the interests of the family or household of another judge, as well as one in

which a member of the legal profession is involved, disqualification in the absence of additional evidence of personal bias or prejudice should not be mandatory. In such cases the appearance of propriety, as well as the reality thereof, will depend on the personality of the judge, and not upon the geographical location where he customarily presides.

One who asserts that a trial judge should be disqualified has the burden of producing evidence which demonstrates a necessity for disqualification. *Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976); *Appeal of Askounes,* 144 Pa.Super. 293, 19 A.2d 846 (1941). This has not been shown in the instant case. The record discloses no interest, pecuniary or otherwise, that would compromise the hearing judge's impartiality. Except that they are two of twelve judges in Montgomery County, there is no evidence that the hearing judge and appellee's husband are close or even casual friends. We do not know if they share common interests and concerns, or belong to the same church, clubs, or other community organizations. As the majority concedes, the record discloses no prejudice, bias or unfairness in evidentiary rulings or in the judge's handling of the hearing. His decision, moreover, has been found to be proper and consistent with the evidence. Under these circumstances I perceive no abuse of discretion by the trial judge, and no reason to believe that a rehearing before an out-of-county judge would produce a more acceptable result. *Cf. Commonwealth v. Perry, supra; Appeal of Askounes, supra; Davenport v. Meyer,* 4 Lebanon 185 (1953).

Because appellant has produced no reasonable basis for challenging the impartiality of the judge who heard the instant case, and because his decision, as the majority concedes, was unbiased and fully supported by the evidence, I would affirm both the order and the proceedings which produced it.

HESTER, J., joins in this opinion.