## Commonwealth v. Johnson

Karen Grigsby, Gaele McLaughlin Barthold, assistant district attorneys, for the commonwealth.

Thomas F. Johnson, for defendant Robert Jacobs.

William P. James, for defendant Ali Scott.

Harvey A. Yanks, for defendant Robert Lewis Jr.

Abbe Smith, Jules Epstein, for all other defendants.

TEMIN, J., March 31, 1987—In these extraordinary petitions, defendants[1] ask the court to grant them relief from certain orders made by Judge Mary Rose Fante Cunningham at a time when she was actively engaged in electronic eavesdropping in furtherance of an investigation of cash transfers from the Roofers Union to certain judges of the Philadelphia Common Pleas Court; a matter in which she has admitted participating. Although the factual framework of these petitions is unique and raises issues of first impression in this jurisdiction, this court has examined the relevant legal precedents and finds that the actions of Judge Cunningham denied defendants certain fundamental rights guaranteed them by the Constitutions of the United States

---

1. Although it is traditional to refer to the parties on a petition as "petitioners" and "respondents," in the interest of clarity the parties here will be referred to as "defendants" and the "commonwealth."

of America and the commonwealth of Pennsylvania and that the relief requested should be granted.

## I. PROCEDURAL HISTORY

This issue was originally raised before the undersigned as part of post-verdict motions filed on behalf of defendant Leon Johnson. (*Commonwealth v. Leon Johnson,* CP, March term, 1986, Nos. 689 through 692 and March term, 1986, Nos. 693 through 703). Subsequently, a petition raising the same issue was filed by the Defender Association of Philadelphia on behalf of 29 clients all of whom had cases at various procedural stages, pending before various judges of the court.[2] This petition was assigned for disposition to the undersigned by order of President Judge Edward J. Bradley of the Philadelphia Common Pleas Court "in the interest of judicial economy." Additional petitions were subsequently filed by both the Defender Association[3] and privately retained and appointed counsel.[4] These petitions were also transferred to the undersigned for disposition. The cases underlying the instant petitions fall into several categories: (1) cases in which Judge Cunningham sat as a judge of the juvenile court on adjudicatory hearings in juvenile cases resulting in the juvenile being declared delinquent,[5]

---

2. James Inabiuette, CP, 8605-0456, et seq., William Schloss, CP, 8608-2486, et seq., Vanessa Dickerson, CP, 8605-0322, et seq., and Chester Brown, CP, 8604-3182, et seq. have since been stricken.

3. James Miles, Anthony Whetstone and Christopher Vincent.

4. Robert Jacobs, represented by Thomas F. Johnson, Ali Scott, represented by William P. James, and Robert Lewis Jr., represented by Harvey A. Yanks.

5. Gilbert Orsini, Terry Foster, Perry Wallace, Jamal Connor, Anthony McFall, Robert Wise, James Miles, Christopher Vincent.

(2) cases in which Judge Cunningham sat as a municipal court judge on preliminary hearings after which defendants were held for trial in the trial division of the common pleas court,[6] (3) cases in which Judge Cunningham sat as a juvenile court judge on certification hearings and certified defendants to be tried as adults in the trial division of the common pleas court,[7] (4) cases in which Judge Cunningham sat as a municipal court judge and presided over municipal court trials and found defendant guilty,[8] and (5) a matter in which Judge Cunningham heard a motion to quash a subpoena in a case that is pending in juvenile court.[9]

## II. JURISDICTION

This court has jurisdiction over the subject matter of these petitions as they all concern criminal actions brought in Philadelphia County. *Commonwealth v. Winter*, 324 Pa. Super. 258, 471 A.2d 827 (1984). Furthermore, this court is given a broad jurisdictional mandate under the Pennsylvania Constitution and the act of July 9, 1976, P.L. 586, §2, as amended; 42 Pa.C.S. §931.

The commonwealth challenges the jurisdiction of this court to hear cases where Judge Cunningham sat either as a preliminary hearing judge or as a municipal court judge for purposes of trial on the grounds that trial in the common pleas court will

6. James Walker, Michael Hatton, Ronnie Pierce, Patrick Garrett, Timothy Reeves, Ricardo Sears, Marcus Ward, Edward Brown, James Rooser, Cedric Bohannon, Aaron White and Jose Torres.

7. David Giles, Kenneth Graham, Lawrence Gouch, Leon Johnson, Michael Jenkins, Dennis Mason, Ralph Rivera, Robert Lewis Jr., and Ali Scott.

8. George H. Maleney and Robert Jacobs.

9. Anthony Whetstone.

cure any defect in either the preliminary hearing or the municipal court proceedings. This argument goes to the appropriateness of a particular grant of relief rather than to the jurisdiction of the court.

The commonwealth challenges the jurisdiction of this court to hear those matters in which Judge Cunningham sat as a judge of the juvenile court in delinquency proceedings on the ground that all of these matters have been completed and the appeal period has expired. The commonwealth argues that this petition constitutes a collateral attack on those rulings and cannot be brought because the Post Conviction Hearing Act, 42 Pa.C.S. §9541, et seq. does not apply to juveniles. Although this is correct as far as it goes, it is equally clear that writs of error corum nobis and habeas corpus were not supplanted by the Post Conviction Hearing Act and that they are available where the act does not apply. These writs are available to attack a criminal conviction (or juvenile adjudication) even after the complete sentence has been served. See *Commonwealth v. Sheehan,* 446 Pa. 35, 285 A.2d 465 (1971).

The commonwealth attacks this court's jurisdiction to hear cases where Judge Cunningham sat as a juvenile judge at certification hearings on the ground that a ruling by the juvenile court to certify a juvenile for trial as an adult is not reviewable until after trial on post-verdict motions, citing *Commonwealth v. Madden,* 342 Pa. Super. 120, 492 A.2d 420 (1985). *Madden* does not apply to the case at bar. The issue here is not whether the particular juveniles should be "decertified," but whether they should be granted new certification hearings because the initial hearings were constitutionally defective. This rationale also applies to the case involving an order by Judge Cunningham to quash a subpoena. Although the order itself is interlocutory

and cannot be appealed pre-verdict, *In re Investigating Grand Jury of Philadelphia County,* 487 Pa. 68, 408 A.2d 1099 (1979), the issue here is not the propriety of the order itself, but the propriety of the forum in which the motion was heard.

The commonwealth's arguments opposing the court's jurisdiction attempt to fit this petition into some previously defined procedural stage of the criminal process such as post-verdict motions, pre-trial motions or Post Conviction Hearing Act petitions. Although it is true that some defendants have a recognized procedural framework in which to raise the issue,[10] the petitions filed here must be considered as unique pleas for relief in response to a set of circumstances never before addressed in any legal literature. To delay or deny relief on the basis of the procedural posture in which any of the underlying cases exists would be an abdication of the responsibility of this court.

## III.  FACTUAL HISTORY

The facts underlying these petitions have been stipulated to by the parties. The relevant facts can be summarized as follows:

In December 1985, Steven Traitz Jr., an official of the Roofers' Union, offered $300 to Judge Cunningham who accepted the money. Unbeknownst to either party the transaction was tape recorded by federal agents. On February 12, 1986, John Tamm, a special agent of the Federal Bureau of Investigation met with Judge Cunningham at her home and advised her that he had recorded her meeting with Mr. Traitz. After receiving this information, Judge

---

10. Leon Johnson and Ralph Rivera are presently at the post-verdict motion stage.

Cunningham agreed to cooperate with the FBI in an ongoing investigation concerning cash gifts from the Roofers Union to certain judges of the Philadelphia Common Pleas Court. Subsequently, Judge Cunningham signed a letter of agreement with the FBI and the Office of the United States Attorney in which she agreed to cooperate in recording conversations as requested by the FBI. The letter included a specific agreement that no federal or state law would be violated in the course of her cooperation. It warned that there was no promise that she would not be indicted by the federal authorities and explicitly stated that there was no immunity from state prosecution or other disciplinary proceedings. However, it promised that federal authorities would make known the full extent of her cooperation to any court or other body investigating or prosecuting her in the future.[11] The period of her cooperation extended from February 12, 1986, through November 13, 1986. On November 17, 1986, the facts relating to her cooperation became public. Prior to this date, these facts were known only to Judge Cunningham, certain officials of the FBI, the Office of the United States Attorney and Judge Cunningham's husband. During the aforesaid period, Judge Cunningham actively participated in electronic eavesdropping by wearing a hidden recording device and surreptitiously recording conversations with Judge Mario Driggs and Judge Esther Sylvester, both of whom had been indicted on federal

11. A list of the possible state and federal statutes or canons which Judge Cunningham's conduct could be held to violate includes but is not limited to: Pennsylvania Constitution Article V, Section 17; 18 United States Code §1962; 18 Pa.C.S. §4701; 42 Pa.C.S. §3303; 65 P.S. §403 and Canons 1, 2 and 5 C (1) of the Code of Judicial Conduct.

charges arising out of cash gifts received from the Roofers Union. During this period, Judge Cunningham continued to preside in criminal and juvenile matters in her position as a duly elected judge of the Philadelphia Common Pleas Court. On November 19, 1986, after Judge Cunningham's involvement became known, she was transferred by the administrative judge of the family court division to hear non-criminal matters. On February 2, 1987, she was suspended by order of the Supreme Court of Pennsylvania pending further action by the court or its agencies.

## IV. DISCUSSION

It is fundamental to our American system of jurisprudence that every litigant appearing before the court is guaranteed the right to a neutral and detached judicial officer.

"The due process clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. This requirement of neutrality in adjudicative proceedings safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process. See *Carey v. Piphus,* 435 U.S. 247, 259-262, 266-267, 98 S. Ct. 1042, 1043, 1050-1052, 1053, 1054, 55 L.Ed. 2d 252, (1978). The neutrality requirement helps to guarantee that life, liberty or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. See *Mathews v. Eldridge,* 424 U.S. 319, 344, 96 S. Ct. 893, 907, 47 L.Ed. 2d 18 (1976). At the same time it preserves both the appearance and reality of fairness, 'generating the feeling, so important to popular government, that justice has been done,' by ensuring that

no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." *Joint Anti-Fascist Committee v. McGrath,* 341 U.S. 123, 172, 71 S. Ct. 624, 649, 95 L.Ed. 817 (1951) (Frankfurter, *J.,* concurring).

"Indeed, 'justice must satisfy the appearance of justice.' *Offutt v. United States,* 348 U.S. 11, 14, 75 S. Ct. 11, 13, 99 L.Ed. 11 (1954), and this 'stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties.' *In re Murchison,* 349 U.S. 133, 136, 75 S. Ct. 623, 99 L.Ed. 942 (1955)." Justice Marshall, writing for a majority of the Supreme Court of the United States in *Marshall v. Jerrico Inc.,* 100 S. Ct. 1610, 1615, 446 U.S. 238, 64 L.Ed. 182 (1980).

The Pennsylvania courts have likewise sought to insure that trials are held before neutral and detached judicial officers. The responsibility rests in the first instance with the presiding judge who is bound to follow the commonwealth's Code of Judicial Conduct. "Observance of these canons by judges is essential to public faith in the justice of our commonwealth's judicial system. They are positive commands, adopted by [the Supreme Court of Pennsylvania], with the force of law." *In The Matter Of The Judicial Inquiry and Review Board v. Judge Bernard Snyder,* No. 108 J.I.R.B. Dkt. 1985, (filed March 20, 1987). The code provides in pertinent part:

"Canon 1

"*A Judge Should Uphold the Integrity and Independence of the Judiciary*

"An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this code should be construed and applied to further that objective.

"Canon 2

"*A Judge Should Avoid Impropriety and the Appearance of Impropriety in All His Activities*

"(A) A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

"(B) A judge should not allow his family, social, or other relationships to influence his judicial conduct or judgment. He should not lend the prestige of his office to advance the private interests of others; nor should he convey or knowingly permit others to convey the impression that they are in a special position to influence him. He should not testify voluntarily as a character witness.

"Canon 3

"(C) Disqualification

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

"(c) he knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a substantial financial interest in the subject matter in controversy or in a party to the proceeding, *or any other interest that could be substantially affected by the outcome of the proceeding.*" (emphasis added).

The Pennsylvania courts have quoted with approval from the ABA Standards Relating to the Function of the Trial Judge §1.7, which provides:

"The trial judge should recuse himself whenever he has any doubt as to his ability to preside impartially in a criminal case *or whenever he believes his impartiality can reasonably be questioned.*" *Commonwealth v. Goodman,* 454 Pa. 358, 311 A.2d 652 (1973) (emphasis in original).

"Questions concerning the fairness, impartiality or bias of the trial court always affect the administration of justice and can cloak the whole system of judicature with suspicion and distrust. Because recusal requests call into question [the court's] ability to mediate fairly they raise important issues in which the public is concerned. If our courts are perceived to be unfair and biased, our future ability to adjudicate the public's grievances and wrongs will be threatened, because we all lose the one thing that brings litigants into our halls of justice—their trust. Without the people's trust that our decisions are made without malice, ill will, bias or personal interest, or motive for or against those submitting to our jurisdiction our whole system of judicature will crumble. Accordingly, when challenges are made concerning the necessity for the recusal of a judge, an important public question is being addressed which we, as responsible representatives of the people, must resolve." *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 489 A.2d 1291 (1985).

It is well established that under Pennsylvania law:

"The precept governing judicial conduct is the avoidance of not only actual impropriety but also the appearance of impropriety. *Commonwealth v. Boyle,* 498 Pa. 486, 447 A.2d 250 (1982); *Commonwealth*

*v. Perry,* 468 Pa. 515, 364 A.2d 312 (1976); Canon 2 of the Code of Judicial Conduct, as amended. Because 'justice must satisfy the appearance of justice,' *Commonwealth v. Stevenson,* 482 Pa. 76, 92, 393 A.2d 386, 394 (1978) (citations omitted), disqualification of a judge is mandated whenever '*a significant minority of the lay community could reasonably question the court's impartiality.* [*Commonwealth v.*] *Darush,* 501 Pa. at 24, 459 A.2d at 732. . . .' (emphasis added)." *Commonwealth v. Bryant,* 328 Pa. Super. 1, 476 A.2d 422 (1984).

Thus in *Commonwealth ex rel. Armor v. Armor,* 263 Pa. Super. 353, 398 A.2d 173 (1978) the court held that: "The judicial system must be kept, like Caesar's wife, above reproach," and ordered a new trial to avoid the appearance of impropriety even though the record revealed absolutely no bias, prejudice or unfairness on the part of the sitting judge. These safeguards are necessary because, "if the judicial system of this commonwealth fails to maintain a high standard of professional ethics and propriety, then [the court] can expect little faith and confidence to be placed in [its] proceedings by the members of the practicing bar or public." *In re Franciscus,* 471 Pa. 53, 369 A.2d 1190 (1977).

In recent years, the Supreme Court has established a two-part procedure that must be implemented when a jurist's bias is challenged. Initially, the application must be made by petition to the judge before whom the proceedings are being tried. That judge may determine the question in the first instance and ordinarily that disposition will not be disturbed unless there is an abuse of discretion. *Reilly by Reilly v. SEPTA,* supra. However, where the recusal motion raises factual allegations as to the judge's impartiality which, if proven, would require recusal and where the judge has personal

knowledge of disputed facts and the matter justifies an evidentiary hearing at which the judge will testify, the matter must be referred to another judge for hearing. *Municipal Publications Inc. v. Court of Common Pleas of Philadelphia,* 507 Pa. 193, 489 A.2d 1286 (1985). These procedures are useful only when the grounds for possible bias are known to the parties to the litigation. Here, we are faced with a set of cicumstances where only the judge was aware of facts that might raise questions as to her impartiality. Canons 2 and 3 of the Code of Judicial Conduct are meaningless unless they require a judge, who knows of facts about himself or herself which cannot be discovered or known by anyone else and that might tend to evidence bias or an appearance of bias, to reveal those facts to the litigants prior to hearing their matter.

In the instant case, Judge Cunningham, faced with the possibility that her acceptance of cash from Traitz might be considered as violative of state or federal criminal statutes or the Pennsylvania Code of Judicial Conduct, agreed to cooperate as an undercover investigator for federal authorities on condition that her cooperation be made known to anyone who might be prosecuting her in the future. The law of Pennsylvania recognizes that a person who has placed herself in this position may have a bias and, in certain instances, where the rights of defendants are involved, that bias must be revealed. When that person is a witness, such facts must be made known to the judge or jury. To do otherwise would deny defendant his Sixth Amendment right to confrontation. *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986). It follows that where the person is a judge, the facts must be revealed to the attorneys representing the litigants appearing before her and to do otherwise denies the litigants

their Fifth and 14th Amendment due process rights to an impartial tribunal.

This court has no authority to decide whether Judge Cunningham has in fact violated any canons of the Code of Judicial Conduct or any of the criminal laws of the commonwealth or of the United States. However, the unusual facts in the matter at bar, lead to the ineluctable conclusion that Judge Cunningham put herself in a position where the possibility that she was biased could at least be questioned and her ability to preside fairly and impartially put in issue. Because of the innate covert nature of the activities in which she had voluntarily agreed to participate, such disclosure was a practical impossibility. This resulted in defendants being denied their due process rights to raise this issue ab initio. Fairness compels us to permit them to raise it now.

The commonwealth's arguments and cases cited by them for the proposition that defendants are not entitled to relief unless they can show specific prejudice are inapposite. In the instant cases we do not know whether specific prejudice could have been shown or not. Certainly no specific prejudice is claimed at this time. However, one of the reasons that defendants cannot show specific prejudice is that they were totally denied the opportunity to explore the possible prejudice and bias of Judge Cunningham prior to the start of proceedings over which she presided. Nor is the commonwealth's argument based on the concurring opinion of Chief Justice Nix, joined in by Justice Flaherty in *In The Matter Of The Judicial Inquiry and Review Board v. Judge Bernard Snyder,* supra, compelling. That case is factually distinguishable from the case at bar. Judge Snyder's actions which were the subject

of a claim of bias were specifically related to two distinct cases over which he was presiding. They did not concern a course of conduct that could affect an entire class of cases to which he was assigned. Furthermore, the statement of Chief Justice Nix concerning whether or not an error might have to be shown in order for relief to be granted is dicta only and therefore not controlling. *Hunsberger v. Bender*, 407 Pa. 185, 180 A.2d 4 (1962).

Finally, it should be noted that this decision implies that the canons may require a judge to reveal, sua sponte, information about his or her own personal or professional life that ordinary citizens may not have to make publicly known. One implication of this might be that a judge could not participate in an activity, such as the one involved here, whose very revelation would defeat its purpose. However, the law has long recognized that a judge may not always engage in activities that are available to an ordinary citizen. As stated by our Supreme Court, quoting with approval language of the Supreme Court of Massachusetts:

"Unquestionably a judge is entitled to lead his [or her] own private life free from unwarranted intrusion. But even there, subjected as he [or she] is to constant public scrutiny in his [or her] community and beyond, he [or she] must adhere to standards of probity and propriety higher than those deemed acceptable for others. *More is expected of him [or her] and, since he [or she] is a judge, rightfully so. A judge should weigh this before he [or she] accepts office. In re Troy*, 364 Mass. 15, 306 N.E. 2d 203, 235 (1973)." *In re Franciscus,* supra, (emphasis added).

In accord is the commentary to canon 2 B of the Code of Judicial Conduct which states in pertinent

part: "[A judge] must expect to be the subject of constant public scrutiny. He [or she] must therefore accept restrictions on his [or her] conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly."

## V. RELIEF TO BE GRANTED[12]

For the reasons stated above, the proceedings held before Judge Cunningham are declared null and void and her orders pursuant to those proceedings are vacated and defendants are awarded new hearings in accordance with the specific relief appropriate in each case. The commonwealth's argument that any errors made at a preliminary hearing are cured at trial and that errors made at a municipal court trial are cured by a trial de novo in the common pleas court are unpersuasive. As so aptly stated by Justice Brennan writing for the majority of the Supreme Court of the United States in *Ward v. Village of Monroeville,* 409 U.S. 57, 34 L.Ed. 2d 267, 93 S. Ct. 80 (1972): ". . . the state's trial court procedure [may not] be deemed constitutionally acceptable simply because the state eventually offers a defendant an impartial adjudication. Petitioner is entitled to a neutral and detached magistrate in the first instance."

Defendants who had adjudicatory hearings before Judge Cunningham are granted new adjudicatory hearings.

Defendants who had certification hearings before Judge Cunningham are granted new certification hearings. In the event that the result of those hearings is to again certify these defendants to be tried as adults, then the proceedings will be reinstated in

12. This paragraph discusses the relief in general. Specific orders in each case will be entered by this court.

the trial division of the common pleas court at the state of the proceedings where they were when this petition was brought.

Defendants who had preliminary hearings before Judge Cunningham are granted new preliminary hearings. In the event that these hearings result in defendants being held for court on the same charges on which they were previously held for court by Judge Cunningham their cases shall be reinstated in the trial division of the common pleas court at the stage they were in when the petition was brought.

Defendants who had a municipal court trial before Judge Cunningham are granted new trials in the municipal court.

Defendant who had a motion to quash heard before Judge Cunningham is granted a new hearing on the motion to quash.

Some defendants have entered guilty pleas. Those who pleaded guilty after Judge Cunningham's activities were disclosed to the public have waived their right to challenge any defect that may have arisen during pre-trial proceedings. *Commonwealth v. Montgomery*, 485 Pa. 110, 401 A.2d 318 (1979). Those defendants who entered their pleas before the disclosure are entitled to relief as their pleas were not knowingly and intelligently made. Those pleas are hereby vacated and the cases remanded for new proceedings in accordance with this option.

These cases[13] are remanded to the administrative judge of the family court division of the Philadelphia Common Pleas Court for proceedings in accordance with this opinion.

---

13. Excluding those where defendant plead guilty after disclosure of Judge Cunningham's activities.