J-S55035-14

2015 PA Super 58

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NICOLE DOLORES DEVRIES | |
| Appellant | No. 326 EDA 2014 |

Appeal from the Judgment of Sentence December 20, 2013
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000054-2013

BEFORE:  BOWES, J., SHOGAN, J., and OTT, J.

OPINION BY OTT, J.:                    **FILED MARCH 20, 2015**

Nicole Dolores Devries appeals from the judgment of sentence entered on December 20, 2013, in the Court of Common Pleas of Pike County. Devries was tried by a jury and convicted on charges of escape, resisting arrest, two counts of reckless endangerment, driving under the influence (DUI), and possession of drug paraphernalia.[1]  She received an aggregate sentence of 25–60 months' incarceration.  Relevant to this timely appeal, the deadly weapon enhancement was applied to her escape sentence. Devries raises three issues; she claims the trial court erred in: (1) denying her motion for change of venue, (2) denying her motion for acquittal on the charge of escape, and (3) improperly applying the deadly weapon

_____

[1] 18 Pa.C.S. §§ 5121(a), 5104, 2705; 75 Pa.C.S. § 3802(d)(1), and 35 P.S. § 780-113(a)(32), respectively.

enhancement. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm in part, vacate in part, and remand for resentencing in accordance with this decision.

We relate the factual history as stated in the trial court's Pa.R.A.P. 1925(a) opinion.

> The criminal information was filed for this case on March 4, 2013 alleging that [Devries], on November 9, 2012, unlawfully removed herself from official detention by fleeing from two Pike County Probation Officers, Jennifer Tamblyn and Jeffrey Baker, after she had been told numerous times that she was under arrest. As testimony at trial established, the Parole and Probation Officers had gone to [Devries'] home in order to do a drug test as part of [Devries'] probation supervision.
>
> During this drug testing, [Devries] tested positive for some drug use which she maintained was a Vicodin pill she had taken for a toothache. After the two officers informed her that she would be placed under arrest and taken to jail for the violation, [Devries] bolted for her car outside her home and tried to flee. The officers followed her to her vehicle, where a brief struggle ensued that resulted with Officer Baker being dragged a short distance by the car before managing to free himself.

Trial Court Opinion, 3/27/2014, at 1-2.

In Devries' first issue, she argues the trial court erred in failing to grant her motion for change of venue based on the fact the alleged victims were employees of Pike County. "The standard of review for a denial of a motion for change of venue is whether there has been an abuse of discretion on the part of the trial judge." *Commonwealth v. Johnson*, 612 A.2d 1382, 1384-85 (Pa. Super. 1992) (citation omitted). Pursuant to the rules of criminal procedure, "Venue or venire may be changed by that court when

it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending." Pa.R.Crim.P. 584(A). Further, pursuant to Rule 584(B), when a change of venue is granted, unless otherwise ordered by our Supreme Court, a trial judge from the original venue will preside over the trial. This provision of the rules reinforces the fact that a change of venue addresses a problem with the location, while recusal addresses an issue with a specific judge or judges.

Here, Devries' challenge to venue was based upon the suggestion that because the complaining witnesses were employees of the county court, the unrealized possibility of prejudice was sufficient to warrant the change. However, the motion for change of venue provided only vague allegations of prejudice, noting the work relationship between the complaining witnesses and the county court. The motion did not allege that the trial judge would be unfair in any way and there is no indication of how or why jurors would be unable to be fair and impartial.

Devries cites **Com. ex rel Armor v. Armor**, 398 A.2d 173 (Pa. Super. 1978) to support her position. However, that case provides no aid to Devries. In **Armor**, one of a divorced couple remarried a Montgomery County trial judge. The other ex-spouse filed a petition to modify child support in Montgomery County, which had been the proper venue. A counter petition was filed seeking to increase child support. A panel of our Court determined the appearance of conflict was too great, having a Montgomery County trial judge ruling on a matter that directly affected a

fellow Montgomery County trial judge. The problem in **Armor** was not with venue, it was with the trial judges and the appearance of impropriety, not with the Montgomery County location itself.

**Armor** might be relevant to provide support for Devries had she claimed the judges of Pike County could not be fair because the complaining witnesses were employees of the court. Such a claim of judicial bias was specifically denied by Devries. The trial court quoted defense counsel at the hearing on the motion:

> This motion is styled as a Motion to Change Venue rather than a request for recusal for a very specific reason. It has nothing to do with a conflict that I believe you or Judge Chelak have in this case as individuals.

Trial Court Opinion, 3/27/2014, at 5, quoting N.T. Hearing, 6/4/2013, at 2.[2]

The vast majority of case law regarding change of venue addresses the issue of pre-trial publicity. "[I]n reviewing a trial court's decision [as to a change of venue] the only legitimate inquiry is whether any juror formed a fixed opinion of [the defendant's] guilt or innocence as a result of pre-trial publicity." **Commonwealth v. Boring**, 684 A.2d 561, 566 (Pa. Super. 1996) (citation omitted). We see no reason why this line of inquiry does not apply in the current situation. Devries has provided no evidence that

---

[2] The notes of testimony from the hearing on the Omnibus Pre-Trial Motion were not included in the certified record. Reviewing the claim as presented in Devries' appellant's brief, we do not believe review of those notes was necessary.

any juror formed a fixed opinion of her guilt because of the complaining witnesses being employees of Court of Common Pleas of Pike County. Accordingly, she is not entitled to relief on this issue.

In her second claim, Devries argues the trial court erred in denying her motion for acquittal because there was insufficient evidence to support her conviction of escape in that the evidence failed to demonstrate she was under "official detention" at the time she fled. In relevant part, the statutory definition of escape is:

> A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

18 Pa.C.S. § 5121(a).

Additionally, relevant to our inquiry:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

***Commonwealth v. Emanuel***, 86 A.3d 892, 894 (Pa. Super. 2014) (citation omitted).

> The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. ***Commonwealth v. Barnes***, 871 A.2d 812, 819 (Pa. Super. 2005). In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. ***Id.*** We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. ***Id.*** The jury was free to believe all, part or none of the evidence. ***Id.*** This Court

may not weigh the evidence or substitute its judgment or that of the factfinder. ***Id.***

***Commonwealth v. Thur***, 906 A.2d 552, 569 (Pa. Super. 2006).

Official detention is defined as:

Arrest, detention in any facility for custody of persons under charge of conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or any other detention for law enforcement purposes; but the phrase does not include supervision of probation or parole.

18 Pa.C.S. § 5121(e).

The relevant aspect of this definition is "any other detention for law enforcement purposes." Here, the evidence demonstrated that Devries was under supervision of probation. Her probation officer and a co-worker went to Devries' residence to conduct a routine home visit. As part of such supervision, Devries would be required to supply a urine sample to demonstrate she was drug free. Devries was informed if she failed her drug test, she could be taken before a judge and her supervision might be terminated. ***See*** N.T. Trial, 11/7/2013, at 39. Further, while in the bathroom, immediately after she supplied the specimen and there was a preliminary indication of opiate use, Devries was told "due to her violation and testing positive that my supervisor had already predetermined if she was to test positive, she would be arrested and taken to jail." ***Id***. at 46. Subsequent to this, Devries repeatedly asked not to be taken to jail because she did not want to leave her daughter. Probation Officer Tamblyn testified she repeatedly told Devries she was going to be placed under arrest or was

under arrest. *Id*. at 48. Officer Tamblyn testified she did not place Devries in handcuffs while in the residence because she did not want the daughter to see her mother in handcuffs. *Id*. at 49-50. Finally, Officer Tamblyn told Devries, "[L]et's go, it's time to go, we have to get out of here." *Id*. at 50. She allowed Devries to retrieve her wallet, but at the same time, Devries grabbed her car keys and fled. *Id*. at 50-51.

Our review of the certified record supports the trial court's determination that Devries was under official detention at the time she fled. Devries was informed of the specific consequences of a failed urine test, specifically that she would be arrested, taken to jail, and brought before a judge. Devries knew, having failed the drug test, that she was in the custody of her probation officer. She knew she was going to jail and pled not to be taken from her daughter. This evidences her knowledge of the situation. Viewed in the light most favorable to the Commonwealth as verdict winner, there was sufficient evidence to prove Devries was under official detention at the time she fled. *See Commonwealth v. Fountain*, 811 A.2d 24 (Pa. Super. 2002) (defendant under official detention prior to official arrest where officer told defendant not to run, and indicated she was attempting to serve an arrest warrant).

Devries' final claim is that the trial court improperly applied the deadly weapon enhancement to her conviction of escape. In relevant portion of the escape statute quoted above, we note:

> (1) An offense under this section is a felony of the third degree where:
>
>> (ii) the actor employs force, threat, deadly weapon or other dangerous instrumentality to effect the escape

18 Pa.C.S. § 5121(d)(1)(ii).

Additionally, the deadly weapon enhancement is found at 204 Pa.Code

§ 303 and states in relevant part:

> (a)  *Deadly Weapon Enhancement*.
>
>    (1)  When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17(a)). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:
>
>> (i)  Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or
>>
>> (ii)  Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or
>>
>> (iii)  Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the offender intended to use the weapon to threaten or injure another individual.
>
>    (2)  When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.17(b)). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual:
>
>> (i)  Any firearm, (as defined in 42 Pa.C.S. § 9712) whether loaded or unloaded, or
>>
>> (ii)  Any dangerous weapon (as defined in 18 Pa.C.S. § 913), or

      (iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

      (3) There shall be no Deadly Weapon Enhancement for the following offenses:

      (ix) Any other offense for which possession of a deadly weapon is an element of the crime.

204 Pa.Code 303(a)(1)-(3).

At sentencing, the Commonwealth argued that pursuant to the jury's verdict, Devries had employed a dangerous instrumentality to aid her escape, not a deadly weapon. Therefore, the Commonwealth argued, the Deadly Weapon Enhancement was applicable to the crime and did not violate the prohibition against double-counting sentencing factors. Counsel for Devries disagreed, claiming the prohibition in Section 303(a)(3)(ix) controlled because possession of a deadly weapon was an element of the crime of which Devries had been convicted. The trial court agreed with the Commonwealth and imposed the enhancement, thereby raising the standard range minimum sentence from 1-12 months to 13-24 months. The trial court imposed a 13-month minimum sentence for escape. This sentence would have represented an aggravated range sentence without the enhancement.

Before we conduct a statutory and regulatory analysis, we examine the trial court's reasoning. Both the Commonwealth and trial court maintain that because the jury specifically determined Devries used a dangerous instrument, not a deadly weapon, the exception found at section

303(a)(3)(ix) is not applicable. We find this position unpersuasive based upon our review of the certified record.

Specifically, during closing argument, the Commonwealth stated:

…but there's a third consideration then after you decide those first two elements of the crime…. [T]he third consideration is did she employ, let me make sure I get this right, force[,] threat, deadly weapon, or dangerous instrumentality to affect [her] escape? So, did she use one of those methods to cause her escape, to aid her escape?

N.T. Trial, 11/7/2013, at 104-105.

The trial court then charged the jury, in relevant part:

Third, if you do find the first two elements have been proven beyond a reasonable doubt, then you must indicate on the verdict form whether you find the following element has also been proven and that element is that the defendant employed force, threat, a deadly weapon or a dangerous instrumentality to affect the escape.

*Id*. at 114-115.

Finally, in relevant part, the trial court explained the verdict form:

Then you go to the second question and it says if you have marked the defendant as guilty to the above offense, please indicate whether you also find the defendant employed force, threat, a deadly weapon or other dangerous instrumentality to affect he escape and under that we have two choices[,] the first defendant did employ a dangerous instrumentality, the second defendant did not employ a dangerous instrumentality. You must place an X in one of those areas indicating what your decision is.

*Id*. at 117-118.

The verdict slip reiterates what the trial court explained. It read:

If you have marked the Defendant as guilty to the above offense, please indicate whether you also find that the Defendant

- 10 -

employed force, threat, a deadly weapon or other dangerous instrumentality to affect her escape.

____ Defendant Did Employ a Dangerous Instrumentality

____ Defendant Did Not Employ a Dangerous Instrumentality

Jury Verdict Form, 11/7/2013.

The jury was not asked to differentiate between the four statutory elements; the jurors were asked to determine if any of the four elements applied. If the jury determined that ANY of the four elements applied, the form was to be marked as indicated. Because the jury was not asked or instructed to differentiate between the statutory elements and the verdict form did not allow for a determination of such differentiation, we cannot agree that the jury specifically determined Devries had used a dangerous instrumentality and not a deadly weapon. Rather, the finding as marked on the verdict form was an acknowledgement that Devries had employed at least one of the four required elements.

Analysis of the relevant statutory and regulatory provisions is subject to the Statutory Construction Act (S.C.A.), 1 Pa.C.S. § 1501 *et seq.*[3] Relevant to our discussion:

> Because statutory interpretation is a matter of law, our standard of review is *de novo,* and our scope of review is plenary.

---

[3] The S.C.A. also applies to Pennsylvania Code provisions. **See** 1 Pa.C.S. § 1502(a)(1)(ii); **Keffer v. Bob Nolan's Auto Service, Inc.**, 59 A.3d 621, 647 n.5 (Pa. Super. 2012); **Commonwealth v. Mohamud**, 15 A.3d 80, 86 n.7 (Pa. Super. 2010).

*Commonwealth v. McClintic*, 589 Pa. 465, 472, 909 A.2d 1241, 1245 (2006). Consequently, we are not bound by the lower court's conclusions regarding the proper meaning of the applicable provisions of this statute. *See Commonwealth v. Kyle*, 582 Pa. 624, 632, 874 A.2d 12, 17 (2005) (holding that our Court owes no duty of deference to the legal conclusions of lower courts regarding an issue of statutory construction).

> Our review is further governed by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq.,* under which our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. *See* 1 Pa.C.S.A. § 1921 (a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."); *Nationwide Ins. Co. v. Schneider*, 599 Pa. 131, 143, 960 A.2d 442, 448 (2008). Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). In this regard, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 59-60, 213 A.2d 277, 282 (1965). Consequently, "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[;][o]ne must also listen attentively to what it does not say." *Kmonk-Sullivan v. State Farm Mut. Auto Ins. Co.*, 567 Pa. 514, 525, 788 A.2d 955, 962 (2001) (internal quotations omitted).

*Commonwealth v. Wright*, 609 Pa. 22, 14 A.3d 798, 814 (2011).

Here, we must construe the meaning of a criminal statute. As such, additional principles apply to our interpretation, such as the statutory mandate that penal statute "shall be strictly construed[.]" 1 Pa.C.S. § 1928(b)(1).

> Of course, the mandate to construe penal statutes narrowly does not override the "general principle that the words of a statute must be construed according to their

> common and approved usage," and does not require this Court to give the words of a penal statute their "narrowest possible meaning." ***Commonwealth v. Booth***, 564 Pa. 228, 766 A.2d 843, 846 (2001). The mandate "does mean, however, that where ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt." ***Id.*** (internal citation omitted)[.]

> ***Commonwealth v. McCoy***, 599 Pa. 599, 962 A.2d 1160, 1168-69 (2009).

***Commonwealth v. Kelly***, 102 A.3d 1025, 1029-30 (Pa. Super. 2014).

The language of both 204 Pa. Code § 303(a)(3)(ix) and 18 Pa.C.S. § 1521(d)(1)(ii) is clear. To be convicted of escape as a felony, one must employ any of the four stated factors, including a deadly weapon. The possession of a deadly weapon is, therefore, an element of the crime. Section 303(a)(3)(ix) forbids the application of the deadly weapon enhancement to any crime of which possession of a deadly weapon is an element. Accordingly, the deadly weapon enhancement is not instantly applicable to escape as a felony of the third degree. Therefore, we must vacate the sentence and remand this matter for resentencing.

Judgment of sentence affirmed in part, vacated in part. Remanded for resentencing in conformance with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2015