J-S47029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ROBERT DARRYL DIXON, JR. | |
| Appellant | No. 1846 MDA 2014 |

Appeal from the Judgment of Sentence June 16, 2014
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0003141-2013

BEFORE:  ALLEN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 04, 2015**

Robert Darryl Dixon, Jr., appeals from the judgment of sentence entered on June 16, 2014, in the Court of Common Pleas of Lancaster County, following his conviction by a jury on charges of simple assault and aggravated assault.[1]  Dixon received an effective sentence of two to five years' incarceration followed by five years of probation.[2]  This term of confinement represents an aggravated range sentence.  In this timely appeal, Dixon claims there was insufficient evidence to support his

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2701(a)(1) and 2704(a)(4), respectively.

[2] Dixon received two to five years plus probation on the aggravated assault conviction and a concurrent term of six months to two years' incarceration for simple assault.

conviction of aggravated assault and that the trial court abused its discretion in sentencing him on the aggravated assault charge. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

On May 28, 2013, Dixon sent a text message to his estranged paramour and mother of two of his children, Tavon Trowery, indicating he wanted to visit his children. She replied that it was too late, the children needed to sleep, and she had to get up early to go to work the next day. Despite being told not to visit, Dixon appeared at Trowery's home. He attempted to enter through the back door, but it was locked. He peered through the kitchen window, where Trowery was doing dishes. She told him to leave. Dixon went to the basement door to gain entry. Trowery attempted to block access to the kitchen by putting a chair under the doorknob of the basement/kitchen door and then moving the refrigerator to block the door. Neither of those efforts deterred Dixon.

Upon his entry into the kitchen, Trowery picked up a kitchen knife to defend herself. However, she put it down to call 9-1-1. A struggle ensued during which Dixon picked up a knife and pushed Trowery against the refrigerator. The knife was pressed to her throat. As they struggled, Dixon cut Trowery's thumb. Although the cut was described by a medical doctor as minor, it was sufficient to cause bleeding and a scar. During the confrontation, Dixon punched Trowery multiple times in the face, dragged her by her hair, and held her in a chokehold. As he held her, he leaned

against her with such force the she suffered a separated shoulder. Dixon fled the scene prior to the arrival of the police. Police officers testified at trial that the kitchen was in a state of disarray when they arrived; a table was overturned, cutlery was scattered over the floor, the refrigerator was askew and a chair was broken.

In his first claim, Dixon argues there was insufficient evidence to support his conviction of aggravated assault, specifically claiming,

> the evidence did not show that he intentionally or knowingly caused the cut on Tayvon Trowery's hand, that he attempted to cause bodily injury to Ms. Trowery with a deadly weapon, that the knife Mr. Dixon was alleged to have been holding was a deadly weapon, or that the minor cut on Tayvon Trowery's hand constituted bodily injury[.]

Appellant's Brief at 5.

In examining this claim, we are guided by our oft-repeated standard of review:

> With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. **Commonwealth v. Barnes**, 871 A.2d 812, 819 (Pa. Super. 2005). In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. **Id**. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. **Id**. The jury was free to believe all, part or none of the evidence. **Id**. This Court may not weigh the evidence or substitute its judgment or that of the factfinder. **Id**.

**Commonwealth v. Devries**, 112 A.3d 663, 669 (Pa. Super. 2015).

Relevant to this matter, a person commits aggravated assault when he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S. § 2702(a)(4).

First, Dixon argues the evidence failed to prove he intended or knowingly caused the cut on Trowery's hand. Intent can be demonstrated circumstantially, through the totality of the circumstances. *See* *Commonwealth v. Hall*, 830 A.2d 537 (Pa. 2003) (intent to cause serious bodily injury within contest of aggravated assault may be proven by direct or circumstantial evidence); *Commonwealth v. Caterino*, 678 A.2d 389 (Pa. Super. 1996) (intent to cause serious bodily harm may be shown by circumstances surrounding the incident). Here, the evidence showed Dixon literally broke into the home by breaking the basement door, pushed aside a chair and refrigerator to get to the victim, and pushed the victim up against the refrigerator while holding a knife to her throat, ultimately cutting her thumb. Immediately thereafter, he dragged her by the hair, punched her repeatedly, put her in a chokehold and separated her shoulder. Under these circumstances, the jury could properly infer that Dixon's intent in holding Trowery at knifepoint and cutting her thumb was not benign. Accordingly, there was sufficient evidence to prove Dixon's intent to cut Trowery.

A second aspect of Dixon's claim is that there was no evidence of intent to harm in placing the knife against Trowery's throat. Essentially, Dixon argues he had the opportunity to harm Trowery, but did not, thereby

evidencing his lack of intent. The argument is unavailing in light of the totality of the circumstances demonstrated above and our Supreme Court's decision in **Commonwealth v. Mathews**, 909 A.2d 1254 (Pa. 2006), that determined it is for the jury to determine whether the failure to follow through on the opportunity to cause injury demonstrated a lack of intent or merely a change of mind.[3]

Next, Dixon argues there was insufficient evidence to prove the knife was a deadly weapon. It is true that the knife was not positively identified by Trowery. However, Trowery did state that it was a kitchen knife and the evidence positively demonstrated that it was sharp enough to cut her thumb. These facts would allow the jury to infer the knife was a sharp kitchen knife, such as a paring knife, rather than a typical blunt table knife. Further, the manner in which the object is used can help define the object as a deadly weapon. **See generally**, **Commonwealth v. Sanders**, 280 A.2d 598 (Pa. Super. 1971) (broken bottle can be a deadly weapon). Here, Dixon used the knife to cut Trowery and held it to her throat while holding her against the refrigerator and yelling, "Do you want to stab me?" In light of the foregoing, we believe there was sufficient evidence to determine the knife qualified as a deadly weapon.

---

[3] We note that this aspect of Dixon's argument was not contained in his Pa.R.A.P. 1925(b) statement of errors complained of on appeal. While this is cause for waiver, we have addressed the claim in that it might be considered as fairly contained as part of the lack of intent claim.

Next, Dixon claims the cut on Trowery's thumb does not qualify as "bodily injury." Dixon is not entitled to relief on this issue. The jury was properly instructed that Dixon could be convicted of aggravated assault if he attempted to cause Trowery bodily injury with a deadly weapon.[4] The trial judge further instructed the jury that to find Dixon made such an attempt, they must determine he took a substantial step toward cause Trowery bodily injury. The evidence is sufficient to support conviction under this scenario. As with the prior aspects of this claim, the totality of the circumstances allowed the jury to find Dixon had taken a substantial step in causing injury to Trowery, with a deadly weapon, by holding her against the refrigerator with a knife to her throat. *See Commonwealth v. Donton*, 654 A.2d 580 (Pa. Super. 1995) (loading a gun and driving 90 miles to wife's abode, without firing gun or aiming it, constituted a substantial step toward causing bodily injury).

Because there was sufficient evidence to find Dixon attempted to cause Trowery bodily injury, we need not determine whether the cut was sufficient to meet the statutory definition of bodily injury.

Finally, Dixon raises a challenge to the discretionary aspects of his sentence. Specifically, he claims the trial court relied upon incorrect

_____

[4] Dixon has made no argument in his brief regarding "attempt", therefore this aspect of the claim has been waived. Further, the issue was not raised in Dixon's Pa.R.A.P. 1925(b) statement of matter complained of on appeal.

sentencing guidelines, failed to state adequate reasons for imposition of the sentence, and failed to consider mitigating factors.

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013). Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> ***Id****.*

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa. Super. 2014).

All four elements have been met. Regarding the existence of a substantial question, we note that an incorrect application of the guidelines is one of the three statutorily listed reasons for vacating a sentence, accordingly, the allegation of same raises a substantial question. 42 Pa.C.S. § 9781. ***See also***, ***Commonwealth v. Whitmore***, 860 A.2d 1032 (Pa. Super. 2004) (failure to state adequate reasons on the record presents a substantial question); ***Commonwealth v. Hyland***, 875 A.2d 1175 (Pa. Super. 2005) (court cannot impose aggravated range sentence without considering mitigating factors).

Although Dixon has properly raised substantial questions for our review, the record belies his assertions and he is not entitled to relief.

First, although the trial court did misstate the guidelines in its opinion denying Dixon's motion to modify sentence and Pa.R.A.P. 1925(a) opinion, the certified record demonstrates the trial court issued the sentence based upon the correct guidelines. Dixon had a prior record score of one and the offense gravity score for aggravated assault, 18 Pa.C.S. § 2702(a)(4), is eight. The sentencing matrix produces a standard range minimum sentence of between 12 to 18 months' incarceration; an aggravated range minimum sentence is between 21 to 27 months. The offense gravity score for simple assault, 18 Pa.C.S. § 2701(a)(1) is three. Accordingly, the standard range minimum sentence is restorative sanctions to six months' incarceration; an aggravated range minimum sentence is three to nine months' incarceration.[5]

At sentencing, the trial court was initially under the belief Dixon had a prior record score of two, which would have produced in incorrect minimum sentence. However, the trial court was corrected and the proper guideline sentences were placed before the trial court. **See** N.T. Sentencing Hearing, 6/16/2014, at 15-16. Because the trial court did not base its sentence upon

_____

[5] The guideline ranges are based upon the sentencing matrix found at 204 Pa.Code § 303.16(a); the offense gravity scores are found at 204 Pa.Code § 303.15.

an incorrect reading of the sentencing guidelines, Dixon is not entitled to relief.

We will address Dixon's final two claims, the allegation of failure to state adequate reasons for sentencing and failure to consider mitigating circumstances, together.

Our review of the notes of testimony from the sentencing hearing, specifically pages 21 – 27, reveal a thoughtful and considered approach to Dixon's sentence. The allegations of a failure to state adequate reasoning and a failure to consider mitigating circumstances are disproven by even a cursory reading of those pages. We will refrain from reiterating the entire statement, but we will quote relevant comments from the trial judge:

> There is a lot to consider, Mr. Dixon. That is one advantage that I think I have when I have been able to sit through the trial and hear the facts and then hear the jury's verdict and from that glean that the jury is satisfied what has been proven beyond a reasonable doubt and what the charge is, what the convictions are about, because I've heard all of the evidence that's been presented. And I have the benefit of the additional records.[6]
>
> In this instance, it is unfortunate that you had a lengthy history, but it did give me a lot of information and I hope a lot of accurate insight.
>
> A couple of distinct things come out in reviewing your juvenile records. You are an intelligent, able, capable young man, and you have been since you have first been in the juvenile system.

---

[6] This refers to the Pre-Sentence Investigation, which the trial court reviewed, but which was sealed due to the references to Dixon's juvenile record and counseling and rehabilitation reports. Those documents were not transmitted to our Court.

When it suits your book, however, you will be passive or unavailing of treatment opportunities that were put your way or counseling or rehabilitation opportunities because it's not what you want to do.

There was one of the evaluations that even questioned your academic abilities. I thought, you know, you are able to be so passive that you can snow an otherwise fairly good psychologist into believing that you're limited.

I know you're not and the psychiatric and later psychological evaluations, the KidsPeace records, the discharge from The Inn all indicate a young man who, if he had wanted to, could have reflected and made changes.

You came out of the juvenile system. So basically, I mean from 2001 on, we have a continuous involvement with the juvenile system or the adult criminal system. With the exception of a 2008 retail theft, all of them are violent, all of them are assaults, disorderly conduct, harassment, reckless endangerment.

As I go through them, one of the things that worries me is that I see this pattern continuing. You continually seem to rely on and even escalate violence to deal with your life.

I'm telling you, I mean, it's just not going to work. It's going to keep you in and out of places like this. Eventually you're going to run into the wrong person.

If you continue on with the attitude that these actions indicate you have held for so long, someone bigger and meaner is just going to take you out. I would hate to see that because it would leave children fatherless and it would take from us someone with abilities who, if he really made an effort, could be a talented, productive member of the community.

So I see these issues with authority. Those are clear. I see this escalation in the violence over time, the more serious charges that are coming, the more aggressive expressions of violence.

But of grave concern is the fact that the events that took place that led to the convictions we are discussing now happened just 21 days after you pled guilty on the simple assault charge that is the basis of the probation violation.[7]

That does make the Court sit up and take notice. It's not right, it's not good, it's not safe for any individuals who come in your path to disagree with you. That's dangerous. It's dangerous for them and for you, and it's serious. And it's bad for the community to think that they've got to know who to avoid because he's going to go off.

N.T. Sentencing Hearing, 6/16/2014, at 21-24.

We believe the above exerpt amply demonstrates that the trial court considered all relevant factors in sentencing, including mitigating factors. Additionally, the trial court provided, on the record, a proper statement of reasons for issuing the aggravated range sentence. Therefore, Dixon is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/4/2015

---

[7] Dixon had earlier assaulted the mother of one of his other children.

- 11 -