J-S31022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RUBEN DELVALLES-VINCENTE | |
| Appellant | No. 880 MDA 2015 |

Appeal from the Judgment of Sentence January 26, 2015
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0001780-2014

BEFORE: SHOGAN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.: **FILED JULY 29, 2016**

Ruben Delvalles-Vincente appeals from the judgment of sentence imposed on January 26, 2015, in the Court of Common Pleas of York County, following his conviction by jury on the charges of first and third-degree murder[1] regarding the shooting death of Carlos Ramos-Diaz. He received a sentence of life imprisonment. In this timely appeal, Delvalles-Vincente raises three claims: (1) there was insufficient evidence to support the conviction for first-degree murder and to disprove Delvalles-Vincente's claim of self-defense, (2) the verdict was against the weight of the evidence, and (3) the trial court erred in failing to instruct the jury on voluntary

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 2502(a) and (c).

intoxication, as it relates to first-degree murder. After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

We first address the issue of sufficiency of the evidence.

> The standard of review for claims of insufficient evidence is well-settled. With respect to such claims, we consider the evidence in the light most favorable to the Commonwealth as verdict winner. In that light, we decide if the evidence and all reasonable inferences from that evidence are sufficient to establish the elements of the offense beyond a reasonable doubt. We keep in mind that it was for the trier of fact to determine the weight of the evidence and the credibility of witnesses. The jury was free to believe all, part or none of the evidence. This Court may not weigh the evidence or substitute its judgment or that of the factfinder.

*Commonwealth v. Devries*, 112 A.3d 663, 667 (Pa. Super. 2015) (citations omitted).

Regarding a claim of self-defense,

> a claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: "(a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the [defendant] did not violate any duty to retreat." *Commonwealth v. Samuel*, 527 Pa. 298, 590 A.2d 1245, 1247, 48 (1991). *See also Commonwealth v. Harris*, 550 Pa. 92, 703 A.2d 441, 449 (1997); 18 Pa.C.S. § 505. Although the defendant has no burden to prove self-defense, *see* discussion below, before the defense is properly in issue, "there must be some evidence, from whatever source, to justify such a finding." Once the question is properly raised, "the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense." *Commonwealth v.*

> *Black*, 474 Pa. 47, 376 A.2d 627, 630 (1977). The Commonwealth sustains that burden of negation "if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that [he] was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save [him]self therefrom; or that the slayer violated a duty to retreat or avoid the danger." *Commonwealth v. Burns*, 490 Pa. 352, 416 A.2d 506, 507 (1980).

*Commonwealth v. Mouzon*, 53 A.3d 738, 740-41 (Pa. 2012) (footnote omitted). Further,

> To sustain a conviction for first-degree murder, the Commonwealth must prove that the defendant acted with the specific intent to kill, that a human being was unlawfully killed, that the accused did the killing and that the killing was done with deliberation. It is the specific intent to kill which distinguishes murder in the first degree from lesser grades of murder. This Court has held repeatedly that the use of a deadly weapon on a vital part of a human body is sufficient to establish the specific intent to kill. Additionally, the Commonwealth can prove the specific intent to kill from circumstantial evidence.

*Commonwealth v. Simpson*, 754 A.2d 1264, 1269 (Pa. 2000) (citations omitted).

The evidence here, viewed in the light most favorable to the Commonwealth as verdict winner, was that on the night at issue and prior to the shooting, Delvalles-Vincente attended a party where he was soundly beaten in two fistfights by the victim. The fight began after Delvalles-Vincente and others repeatedly made fun of Ramos-Diaz for being a kept man. N.T. 1/20/2015, pp. 92-93; 2/21/2015, pp. 128, 203, 258. When Ramos-Diaz first approached Delvalles-Vincente in the house where the party was being held, Delvalles-Vincente pulled a gun on Ramos-Diaz. N.T.

1/21/2015, pp. 130, 203, 205.  Ramos-Diaz pushed the gun away and began punching Delvalles-Vincente.  N.T. 1/20/2015, pp. 94, 109; 1/21/2015, pp. 130, 180, 205-06.

After the fight in the kitchen ended, Delvalles-Vincente and his friend, Victor Martinez-Raices, were ejected from the house.  N.T. 1/20/2015, pp. 95, 110; 1/21/2015, pp. 132, 193, 206-07, 260, 1/23/2015, p. 385. However, they did not leave; Delvalles-Vincente sought a rematch, threatening the house with gunfire if Ramos-Diaz did not come outside to fight again.  N.T. 1/20/2015, p. 96; 1/21/2015, pp. 132-33, 181, 207, 260-66.  Eventually, Ramos-Diaz and others went outside. N.T. 1/20/2015, p. 98; 1/21/2015, pp. 135, 194, 209; 1/23/2015, p. 385.  The two men agreed to fight again, by street rules – meaning fistfight only.  N.T. 1/20/2015, p. 99; 1/21/2015, p. 194.  Martinez-Raices had picked up Delvalles-Vincente's gun at some point during the first fistfight.  N.T. 1/21/2015, pp. 131, 206; 1/23/2015, p. 385.  The result of the second fight was the same as the first. When the fight ended, Ramos-Diaz walked away.  N.T. 1/20/2015, p. 102; 1/21/2015, p. 212.  Delvalles-Vincente retrieved his gun from Martinez-Raices and ran up behind Ramos-Diaz, shooting at him at least four times. N.T. 1/20/2015, pp. 104, 119.  Ramos-Diaz was struck three times, twice in the leg and once in the back.  The gunshot wound to his back proved fatal.

There was a perforation of the skin[,] following that[,] soft tissues underneath the skin was issued [sic[2]] as the bullet continued, it injures muscles of the left side of the body, part of the lumbar vertebral column which is your backbone in your abdomen, muscles along the backbone, and then the aorta which is the largest blood vessel in the body as it branches into the thoracic arteries which are vessels that go into your leg. So at that level this large vessel was perforated. That caused extensive bleeding.

Then the bullet continued as it entered soft tissues associated with the intestines and the intestines themselves and ultimately soft [t]issues, muscles along side of the abdomen as the bullet exited through the right side of the abdomen.

N.T. 1/21/2015, p. 232. The fatal bullet path "directed from Mr. Ramon-Diaz' back to his front, from left to right and slightly upward." N.T. 1/21/2015, p. 234.

The evidence demonstrated that after being beaten in a fistfight, Delvalles-Vicente obtained the murder weapon from another person, approached the victim from behind, and shot him multiple times, one of those shots causing extreme damage to the victim's internal abdominal organs, killing him. There is no question that a gun is a deadly weapon and the abdomen is a vital part of the human body. *See Commonwealth v. Sepulveda*, 855 A.2d 783, 788 (Pa. 2004) (abdomen is a vital part of the human body). Accordingly, the evidence is sufficient to sustain the verdict of first-degree murder.

---

[2] We believe this is a typographical error; the word was more likely "injured."

Delvalles-Vincente testified it was Ramos-Diaz who introduced the gun into the fight and that he fired at Ramos-Diaz believing Ramos-Diaz was attempting to kill him, but the jury was entitled to disbelieve his version of the events. The testimony of other witnesses was that Delvalles-Vincente continued the fight by staying outside after being ejected and threatening the home with gunfire if Ramos-Diaz did not come outside to continue the fight. Not only could Delvalles-Vincente have safely retreated after the outside fistfight ended, but Delvalles-Vincente intentionally continued the violence by obtaining a gun, following Ramos-Diaz, who was leaving the fight scene, and shooting Ramos-Diaz in the back. All of these facts are sufficient to defeat Delvalles-Vincente's claim of self-defense.

Next, Delvalles-Vincente argues the verdict was against the weight of the evidence. Specifically, he claims the jury improperly ignored evidence that Delvalles-Vincente was intoxicated at the time he shot Ramos-Diaz and therefore was incapable of forming the specific intent to kill. The argument is unavailing.

Initially, we note, "The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Commonwealth v. Benito*, 133 A.3d 333, 335 (Pa. Super. 2016) (citation omitted). Also,

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at

a different conclusion. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.' " It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail."

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014) (citation omitted).

Here, the trial court heard the evidence presented at trial and determined the jury's verdict was not against the weight of the evidence. Our review of the certified record finds no abuse of discretion in that determination. Accordingly, Delvalles-Vincente is not entitled to relief on this issue.

In his final claim, Delvalles-Vincente argues the trial court erred in not charging the jury on the defense of voluntary intoxication.[3] "A defense of diminished capacity negates the element of specific intent, and thus mitigates first-degree murder to third-degree murder." ***Commonwealth v. Padilla***, 80 A.3d 1238, 1263 (Pa. 2013) (citation omitted).

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).

Here, Delvalles-Vincente argues he presented evidence demonstrating he was intoxicated and had sniffed cocaine. One witness testified he appeared "drugged out." N.T. 1/21/2015, p. 216. Another witness claimed when Delvalles-Vincente called her after the shooting, he sounded

_____

[3] This defense is also known as "diminished capacity."

intoxicated because he was not speaking clearly and did not seem to know where he was. N.T. 1/22/2015, p. 318.

> The mere fact of voluntary intoxication does not give rise to a diminished capacity defense. Rather, to prove diminished capacity due to voluntary intoxication, a defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities. **Commonwealth v. Blakeney**, 596 Pa. 510, 946 A.2d 645, 653 (2008); **Commonwealth v. Spotz**, 587 Pa. 1, 896 A.2d 1191, 1218 (2006). Evidence that the defendant lacked the ability to control his or her actions or acted impulsively is irrelevant to specific intent to kill, and thus is not admissible to support a diminished capacity defense. **Commonwealth v. Vandivner**, 599 Pa. 617, 962 A.2d 1170, 1183 (2009).
>
> This Court has previously made clear that a jury instruction regarding diminished capacity due to voluntary intoxication is justified **only** when the record contains evidence that the accused was intoxicated to the point of losing his or her faculties or sensibilities. **Commonwealth v. Reiff**, 489 Pa. 12, 413 A.2d 672, 674 (1980). Evidence that the accused ingested alcohol or other intoxicating drug—without more—does not warrant a voluntary intoxication instruction.

**Commonwealth v. Padilla**, 80 A.3d at 1263 (emphasis in original).

Delvalles-Vincente provides no further support for his contention that his appearing "drugged out" and not knowing where he was equates to intoxication "to the point of losing his facilities and sensibilities." **Padilla**, **supra**. Additionally, the Commonwealth argues that Delvalles-Vincente's own testimony belies his claim of diminished capacity.

At trial, Delvalles-Vincente claimed he clearly remembered the facts regarding his claim of self-defense and the circumstances that led to his

shooting Ramos-Diaz. Specifically, Delvalles-Vincente testified on cross-examination as follows:

Q: …[D]o you remember where you went after the fight?

A: Marybeth's.

Q: You went to her house; correct?

A: Yes, with my cousin [Martinez-Raices].

Q: And you were with your cousin and you walked there; correct?

A: Yes.

Q: Once you got there – well, first of all, how long did it take to get to her house from the fight?

A: I don't know.

Q: You don't know? So you remember who attacked you; correct?

A: Yes.

Q: You remember why they attacked you; correct?

A: Yes, I remember. I imagine it was because of – yes. Yes. I remember. I remember.

Q: And you remember that Alex[4] made you jump over a fence; correct?

A: Yes.

Q: And you remember that Carlos [Ramos-Diaz] came out of the house; correct?

_____

[4] Alex Resto-Montalvo and his wife, Loruama Pacheco-Morales, were the co-owners of the house.

A: Yes.

Q: And you knew everyone at the party; correct?

A: Yes.

Q: And you even remember what you had to drink at the party, didn't you?

A: Yes.

Q: And you remember exactly how that fight went down; correct?

A: The first fight?

Q: The second fight.

A: The second fight I was forced to fight.

Q: But you remember exactly what happened; correct?

A: Yes. That Alex Resto forced me to fight.

Q: Okay. And you remember – in fact you testified as to what you were thinking at the time you shot Carlos; correct? You shot Carlos, you remember why you did it; correct?

A: Because I was afraid for my life.

Q: Because you were afraid for your life?

A: I didn't want him to get close to me to take the gun away from me.

Q: Okay. So you had the gun; correct?

A: I took it away from Carlos.

Q: You took –

A: From his hands.

Q: You took the gun from Carlos' hands?

A: Yes.

N.T. 1/22/2015, pp. 358-60.

Clearly, Delvalles-Vincente's own testimony demonstrated that he was not intoxicated to the point of losing his faculties. Accordingly, the trial court correctly denied his request for a jury instruction regarding diminished capacity.

In light of the foregoing, Delvalles-Vincente is not entitled to relief on any of his claims.

Judgment of sentence affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/29/2016