J-S13025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ANTHONY ROCCO FRANKLIN :
:
Appellant : No. 871 MDA 2019

Appeal from the Judgment of Sentence Entered December 27, 2018
In the Court of Common Pleas of Columbia County Criminal Division at
No(s): CP-19-CR-0000394-2017

BEFORE: STABILE, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.: **FILED OCTOBER 26, 2020**

Appellant, Anthony Rocco Franklin, appeals from the Judgment of

Sentence entered on December 27, 2018, after a jury convicted him of First-

Degree Murder and related crimes.[1] He asserts the trial court abused its

discretion in denying his Motion to Change Venue and his request that the jury

visit the murder site. He also challenges the sufficiency and weight of the

evidence. After careful review, we affirm.

In 2007, Frank Spencer first reported to Hemlock Township police that

his estranged wife, Maria Sanutti-Spencer, had threatened to kill him or to

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The jury convicted Appellant of First-Degree Murder, Conspiracy, Burglary,
two counts of Arson, and Terroristic Threats. 18 Pa.C.S. §§ 2502(a), 903(a),
3502(a)(2), 3301(a)(1)(i), (ii), and 2706(a)(1), respectively.

have Appellant (her father) kill him.  Subsequently, Mr. Spencer filed regular reports detailing the threats against him, and these reports increased in frequency up until his murder in July 2012.[2]

In 2007 and 2008, while incarcerated on unrelated charges, Appellant repeatedly solicited a fellow inmate to kill Mr. Spencer.  When this fellow inmate refused, Appellant replied, "Well, I'll take care of it myself."  N.T. Trial, 10/12/18, at 287.  In July 2009, Appellant was released on parole.

On October 31, 2009, Appellant burglarized a home and office owned by Mr. Spencer, taking Mr. Spencer's business records.[3]  Thereafter, Ms. Sanutti-Spencer texted to Mr. Spencer, "Thanks for all the cash receipts. Extremely helpful."  *Id.* at 476.  When the police asked her how she obtained these records, Ms. Sanutti-Spencer stated her belief that members of her family had taken them.  Appellant admitted to police that he was present when Ms. Sanutti-Spencer received the records.  Additionally, Appellant would later admit that he had burglarized this home.

In November 2009, Appellant intervened in a dispute between Mr. Spencer and Ms. Sanutti-Spencer.  Appellant "told her to stop, that he would take care [of it], that he would see [Mr. Spencer] dead."  *Id.* at 318.

In January 2010, Mr. Spencer planned to vacation in the Dominican Republic with his girlfriend.  On the night before their trip, on January 24,

---

[2] A divorce decree issued in June 2012, shortly before Mr. Spencer's murder.

[3] The building was located at 1394 Millville Road, Hemlock Township, Columbia County.  Mr. Spencer did not reside at this home.

2010, Appellant set fire to the building located at 1394 Millville Road, and it was destroyed. Appellant would later admit to the arson.

Shortly after the fire, Ms. Sanutti-Spencer relayed a message from Appellant through a mutual friend to Mr. Spencer, warning Mr. Spencer that if he didn't apologize to Appellant, "he was a dead man." *Id.* at 376.[4]

On July 1, 2012, Appellant shot Mr. Spencer from a "sniper's nest" hidden across the street from Mr. Spencer's home.[5] Appellant then approached Mr. Spencer as he lay dying and shot him again in the head. Appellant and Ms. Sanutti-Spencer dragged Mr. Spencer's body inside and tried to clean blood from the outside of the home. Appellant would later admit to several people, including his two sons, that he had murdered Mr. Spencer.

In August 2013, after providing testimony to a grand jury investigating the Spencer murder, Appellant fled to Argentina, where local authorities eventually apprehended him.[6] While awaiting extradition, Appellant admitted his involvement in these crimes to another inmate, who later testified at Appellant's trial.

---

[4] It is not clear why Appellant demanded an apology. Trial testimony indicates only that "[Mr. Spencer] made an ass out of [Appellant]" at a party. *Id.* at 376.

[5] Mr. Spencer's home was located at 20 Fairview Drive, Hemlock Township, Columbia County.

[6] Following issuance of the Grand Jury Presentment, the Commonwealth filed charges against Appellant on July 28, 2014.

In April 2017, Appellant returned to Pennsylvania to face the charges filed against him. In August 2017, Appellant filed an Omnibus Pre-Trial Motion seeking, *inter alia*, a change of venue or venire. Following a hearing, the trial court denied Appellant's Motion in relevant part.[7] In January 2018, Appellant filed a Motion *in Limine* requesting, *inter alia*, that the jury view the murder scene. The trial court denied Appellant's request.

Following trial in October 2018, the jury convicted Appellant as set forth above. On December 27, 2018, the trial court imposed a sentence of life imprisonment without the possibility of parole and a consecutive term of eleven to forty-five years of incarceration.

Appellant timely filed a Post-Sentence Motion, which the trial court denied. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) Statement. The trial court issued a responsive Opinion.[8]

Appellant raises the following issues on appeal:

1. Did error occur in denial of Appellant's Motion for Change of Venue/Venire?

2. Did error occur in denial of Appellant's Motion to transport the jury to the scene of the murder?

---

[7] Appellant renewed his request for change of venue or venire during jury selection; the trial court again denied Appellant's request.

[8] On June 1, 2020, we concluded that the trial court had failed "to present adequate facts and analysis addressing the issues raised by Appellant." Order, 6/1/20. We therefore remanded this matter to the trial court with instructions to provide an Opinion compliant with Pa.R.A.P. 1925(a). *Id.* On July 16, 2020, the trial court filed a second Opinion, which included additional analysis. *See generally* Trial Ct. Op., 7/16/20, at 1-8.

3. Was the evidence insufficient to convict?

4. Was the verdict against the weight of the evidence?

Appellant's Br. at 12 (suggested answers omitted).

## Change of Venue or Venire

In his first issue, Appellant contends that the Columbia County Court of Common Pleas abused its discretion when it denied his requests for a change of venue or venire. Appellant's Br. at 17. According to Appellant, a fair trial was impossible, as evidenced by the number of potential jurors who were eliminated from the jury pool either because they knew the parties involved or acknowledged that they could not be fair and impartial. *Id.* at 17-18.

We review the court's decision for an abuse of discretion. ***Commonwealth v. Devries***, 112 A.3d 663, 666 (Pa. Super. 2015).

Venue or venire may be changed by the court before which a case is pending "when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending." Pa.R.Crim.P. 584(A).

The focus of the trial court's inquiry is whether a defendant will suffer prejudice due to pretrial publicity surrounding his upcoming trial. Absent limited circumstances, not relevant here, in which the trial court may presume prejudice, "the only legitimate inquiry is whether any juror formed a fixed opinion of [the defendant's] guilt or innocence as a result of the pre-trial publicity." ***Commonwealth v. Casper***, 392 A.2d 287, 291 (Pa. 1978) (citation omitted). A defendant must demonstrate to the trial court "actual

prejudice in the empaneling of the jury[.]" ***Commonwealth v. Faulkner***, 595 A.2d 28, 41 (Pa. 1991) (citation omitted).

In addressing Appellant's claim, the trial court found that the publicity surrounding this case had not been sensational or inflammatory and that there had been a significant cooling-off period between the pretrial publicity surrounding Appellant's crimes and the commencement of his trial. ***See*** Trial Ct. Op., 07/16/20, at 2-3. It did not find that Appellant had demonstrated actual prejudice, noting to the contrary that it had empaneled a fair jury with little difficulty. ***Id.*** at 3-4 ("[T]he jury was picked in approximately two (2) hours."). The trial court therefore concluded that no change of venue or venire was necessary. ***See id.***[9]

We discern no abuse of discretion in the trial court's decision to deny Appellant's request for a change of venue or venire. Appellant has not identified any specific pretrial publicity that undermined his right to a fair and impartial trial or any specific juror that was biased against him. Moreover, we have reviewed carefully the transcript of the *voir dire* of the jury panel. ***See***

_____

[9] We infer from the trial court's findings concerning the nature of the pre-trial publicity surrounding Appellant's case that the court declined to presume that Appellant suffered prejudice during the jury empanelment. ***See*** Trial Ct. Op. at 2-4; ***see also Casper***, 392 A.2d at 291 ("[A] presumption of prejudice . . . requires the presence of exceptional circumstances" demonstrating that "there is a substantial likelihood that a fair trial cannot be had."). Appellant has not argued that we should presume prejudice. ***See*** Appellant's Br. at 17-18. Thus, he has waived our consideration of such claim. ***See*** Pa.R.A.P. 2119(a); ***Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007).

N.T. Jury Selection, 9/11/18, at 1-111. The trial court promptly removed all panel members who acknowledged that they could not be fair and impartial.[10] For these reasons, we conclude that Appellant has not demonstrated actual prejudice and that the trial court did not abuse its discretion in denying Appellant's Motion for Change of Venue or Venire.

**Jury View of the Murder Scene**

In his second issue, Appellant contends that the trial court abused its discretion when it denied his request for the jury to view the murder scene in person. Appellant's Br. at 18. According to Appellant, it was unfair to deny him an opportunity to demonstrate visually to the jury that the Commonwealth's version of events was impossible. *See generally id.* at 19-21.

We review the trial court's decision not to allow a view of the crime scene for an abuse of discretion. **Commonwealth v Pierce**, 645 A.2d 189, 197 (Pa. 1994); Pa.R.Crim.P. 643(A).

The trial court may deny a request to view the crime scene when "the conditions of the scene at the time of trial [are] not reasonably similar to the conditions at the time of the murder." ***Commonwealth v. McNeil***, 679 A.2d

---

[10] Jury panel members expressed different reasons for their inability to evaluate fairly the evidence. *See, e.g.*, N.T. Jury Selection, 9/11/18, at 26 (panel member was friends with Appellant and his family). However, in direct response to a question from the Commonwealth concerning the effect of pre-trial media coverage surrounding the murder of Mr. Spencer, only four members of the panel indicated that they could not be fair and impartial. *Id.* at 75-78. We therefore reject Appellant's contention that the panel "was overwhelmingly biased against [him]." Appellant's Br. at 18.

1253, 1256 (Pa. 1996), *superseded on other grounds by statute as stated in* **Commonwealth v. Rega**, 933 A.2d 997 (Pa. 2007); **Pierce**, 645 A.2d at 198 (holding that denial of a motion to view is proper where "exact conditions could never be adequately duplicated").

In explaining it decision to deny Appellant's request for a view, the trial court reasoned that it would have been difficult to duplicate the conditions present at the time of the murder because (1) approximately six years had passed between the murder and Appellant's trial and (2) the trial occurred at a different season of the year. Trial Ct. Op. at 3-4. The trial court therefore concluded that the jury would little benefit from a view of the murder scene. **See id.**; **see also** N.T. Trial, 10/11/18, at 4-5 (denying Appellant's request after brief argument).

We agree with the trial court's reasoning. Appellant's trial was delayed for many years because he fled to Argentina. Further, while the murder occurred during the summer, Appellant's trial commenced in the fall. Given the passage of time and the change of seasons, it would have been impossible to duplicate the conditions present at the time of the murder. We therefore discern no abuse of the trial court's discretion in denying Appellant's request that the jury view the murder scene.

## Sufficiency of the Evidence

In his third issue, Appellant contends that the evidence was insufficient to support the jury's verdict. Appellant's Br. at 21. After review, we agree with the trial court that Appellant has waived this claim.

It is well-settled that to preserve a challenge to the sufficiency of the evidence in a criminal case, the appellant must specify in his Pa.R.A.P. 1925(b) statement how the Commonwealth's evidence did not establish his alleged crimes. **Commonwealth v. Williams**, 959 A.2d 1252, 1257 (Pa. Super. 2008). To do so, an appellant's statement must delineate "the element or elements upon which the evidence was insufficient." **Commonwealth v. Carr**, 227 A.3d 11, 18 (Pa. Super. 2020) (citation omitted); **see also Commonwealth v. Tyack**, 128 A.3d 254 (Pa. Super. 2015). "Such specificity is of particular importance in cases where . . . the [a]ppellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." **Commonwealth v. Gibbs**, 981 A.2d 274, 281 (Pa. Super. 2009) (citation omitted).

Here, the trial court concluded that Appellant's Rule 1925(b) Statement invited "speculation, conjecture, and/or guess[work] . . . [and] failed to specify which elements and convictions were not prove[n] beyond a reasonable doubt." Trial Ct. Op. at 6. The trial court therefore concluded that Appellant waived his sufficiency claim. **Id.**

We agree. Appellant failed to identify which of his many crimes that he sought to challenge as unsupported by sufficient evidence. Moreover, he made no attempt to delineate the specific elements of any crime for which he was convicted. Rather, Appellant broadly stated that "the evidence was

insufficient to convict[.]" Pa.R.A.P. 1925(b) Statement, 7/10/19, at ¶ 3.[11] Appellant's failure is egregious because the jury convicted him of six distinct crimes, each with numerous elements that the Commonwealth must prove beyond a reasonable doubt. For these reasons, we agree with the trial court that Appellant waived his sufficiency challenge.

**Weight of the Evidence**

In his fourth issue, Appellant challenges the weight of the evidence. Appellant's Br. at 22. Appellant's argument essentially contests the persuasiveness of the Commonwealth's extensive circumstantial evidence. *See id.* at 23-28; *see also* Pa.R.A.P. 1925(b) Statement at ¶ 4 ("[T]he Commonwealth's version of events requires belief in an impossible narrative."). No relief is due.

"The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citation omitted).

"Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." *Commonwealth v. Clay*, 64 A.3d 1049,

_____

[11] In support of his sufficiency claim, Appellant further asserted that the evidence included "an unreliable time frame, wet blood at a presumably old crime scene[,] and no physical evidence linking [Appellant] to the crimes", all of which are arguments addressed to the weight, not the sufficiency, of the evidence. Pa.R.A.P. 1925(b) Statement at ¶ 3.

1055 (Pa. 2013) (citations omitted; emphasis removed). "It is the trial court's function to evaluate and weigh the evidence; such determinations are not lightly disturbed by an appellate court." **Commonwealth v. Hamaker**, 541 A.2d 1141, 1143 (Pa. Super. 1988) (citation omitted).

Thus, the trial court's decision whether a verdict was or was not against the weight of the evidence is one of the least assailable of its rulings. **See Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000). We will not reverse the trial court's decision unless it has "palpably abused its discretion." **Commonwealth v. Castelhun**, 889 A.2d 1228, 1234 (Pa. Super. 2005) (citation omitted).

In addressing Appellant's weight claim, the trial court deferred to the jury as the finders of fact. The trial court noted that "the evidence was more than sufficient[,]" and concluded that the jury's guilty verdict would not "shock the conscience of a reasonable person." Trial Ct. Op. at 8.

Following our review of the evidence, we discern no palpable abuse of the trial court's discretion in denying Appellant's weight claim. It was within the jury's purview to weigh the extensive circumstantial evidence presented by the Commonwealth establishing Appellant's guilt in these crimes. In addition, it was within the jury's purview to determine the credibility of the testimony of a former fellow inmate, as well as Appellant's two sons, that Appellant admitted to being present or actually committing the murder of Mr. Spencer and the burglary of his home. **See** N.T. Trial, 10/15/18, at 665 (testimony of Michael Sanutti), 679-81 (testimony of Anthony Rocco Sanutti,

- 11 -

Jr.); *see also* Commonwealth Exhibit # 200, N.T. Deposition, 3/29/18, at 29-35 (videotaped testimony of David Roman, a fellow inmate of Appellant in Argentina). The jury's verdict does not shock the conscience of this Court. For these reasons, we discern no abuse of the trial court's discretion in denying Appellant's weight claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>10/26/2020</u>